## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CHAD CUNNINGHAM,**

      **Plaintiff,**

**vs.**                                                     **NO. CIV 10-451 BB/RLP**

**UNIVERSITY OF NEW MEXICO BOARD OF
REGENTS, UNIVERSITY OF NEW MEXICO
SCHOOL OF MEDICINE, and the NATIONAL
BOARD OF MEDICAL EXAMINERS,**

      **Defendants.**

### DEFENDANT UNIVERSITY OF NEW MEXICO BOARD OF REGENTS AND UNIVERSITY OF NEW MEXICO SCHOOL OF MEDICINE'S MOTION TO DISMISS

**COME NOW** Defendants University of New Mexico Board of Regents and University of New Mexico School of Medicine[1] (collectively, "UNM Defendants"), by and through their counsel of record, Cadigan & Park, P.C. (Alfred A. Park and Lawrence M. Marcus), and hereby move this Honorable Court to dismiss all claims against them in the above styled cause.  UNM Defendants move pursuant to Fed. R. Civ. P. Rules 12(b)(1) & 12 (b)(6), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, respectively.  In addition, in the alternative, Defendant University of New Mexico School of Medicine moves, pursuant to Fed. R. Civ. P. Rule 21, for this Honorable Court to dismiss it from this action, as it is not a proper party to the suit.  For their Motion, UNM Defendants **STATE**:

---

[1] Plaintiff has listed the University of New Mexico School of Medicine as a separate Defendant.  However, he has stated no facts that would allege that the School of Medicine has a separate corporate identity.  Rather, Plaintiff has admitted that the School of Medicine was operated by the University of New Mexico Board of Regents.  The Board of Regents is, in turn, an arm of the state.  UNM Defendants list the school as a separate Defendant and use plural language simply for the sake of consistency with the Complaint, and do not thereby admit that the School of Medicine has a separate identity or is a proper party to this lawsuit.

## I. PROCEDURAL BACKGROUND

Plaintiff Chad Cunningham brought the present suit against UNM Defendants and the National Board of Medical Examiners ("NBME") alleging that Defendants failed to provide reasonable accommodations to him regarding the administration of Step 1 of the United States Medical Licensing Examination ("USMLE"), a national examination for which all American medical students are required to sit after their second year of medical school.  Plaintiff alleges that he suffers from a visual perception disorder known as Scotopic Sensitivity Syndrome, also called Irlen's Syndrome, which supposedly has interfered with his ability to read for long periods of time.  Plaintiff's First Amended Complaint, ¶ 10, 15-17.  Plaintiff alleges that his disorder generally did not impair his learning ability.  Id., ¶ 12, 21.  Indeed, Plaintiff alleges that he was a superior student in grade school, high school, and college, particularly in the areas of math and science, without requiring any mitigating measures.  Id.  Plaintiff further contends that the greater reading demands of medical school caused him to suffer from headaches, but that he was able resume his studies using colored glasses, and did not require any accommodation from UNM.  Id., ¶ 22.  Indeed, Plaintiff succeeded in his first two years of medical school. Id., ¶ 23.

At the conclusion of his second year of medical school, Plaintiff took Step 1 of the USMLE.  Id., ¶¶ 24-27.  Plaintiff alleges that he failed the examination by a small margin because the examination was conducted in a small room with bright, florescent lighting, which resulted in him suffering from headaches. Id. Plaintiff then applied for accommodation from NBME. Id., ¶¶ 28-29. Plaintiff claims NMBE denied this request, and told him that he would need to submit further evidence of his disability. Id., ¶¶ 30-31. However, Plaintiff failed to submit the required evidence, claiming that he lacked time to assemble it. Id., ¶¶ 32-33.  Instead, Plaintiff requested that UNM Defendants provide him with unspecified accommodations and

advocate on Plaintiff's behalf to the NBME. Id., ¶ 36. Plaintiff then alleges that UNM Defendants denied his request, and that, as a consequence, Plaintiff failed the next administration of the USMLE. Id. ¶¶ 33, 37.

Plaintiff has filed the present case against UNM Defendants and NMBE, alleging violations of 42 U.S.C. § 1983 (Count I), the Americans with Disabilities Act ("ADA") and the Rehabilitation Act (Count II), and breach of contract (Count III).[2] Plaintiff seeks money damages, as well as injunctive relief, such as the tolling of the six year requirement for the completion of medical school. Plaintiff's Complaint should be dismissed in its entirety, because Plaintiff's causes of action under 42 U.S.C. § 1983, the Americans with Disabilities Act, and breach of contract are barred by the Eleventh Amendment. Moreover, Plaintiff has failed to state a claim upon which relief can be granted for any of his causes of action.

## II. ARGUMENT

### A.  LEGAL STANDARD FOR A MOTION TO DISMISS

UNM Defendants bring this Motion pursuant to Fed. R. Civ. P. Rules 12(b)(1) and 12(b)(6) on the grounds that this Court lacks subject matter jurisdiction, and that Plaintiff has failed to bring a claim upon which relief can be granted, respectively. The Motion is brought, in part, on the grounds that Plaintiff's claims under 42 U.S.C. § 1983, the Americans with Disabilities Act, and breach of contract, are barred by immunity under the Eleventh Amendment to the United States Constitution. The United States Supreme Court has not decided whether Eleventh Amendment immunity is a matter of subject matter jurisdiction or whether it is merely a defense to a federal action. Wisc. Dept. of Corrections v. Schacht, 524 U.S. 381 (1998). However, the Tenth Circuit has held that the Eleventh Amendment divests a federal court of

---

[2] Plaintiff's First Amended Complaint contains five counts.  Counts IV and V are violations of the ADA and breach of contract, respectively, against Defendant NBME, thus Counts I-III are the sole counts against UNM Defendants.

jurisdiction over lawsuits in which a state entity is sued.  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002); Thompson v. Colorado, 278 F.3d 1020, 1023 (10th Cir. 2001), overruled on other grounds by Klinger v. Director, Dept. of Revenue, State of Missouri, 455 F.3d 888, 895 (8th Cir. 2006).

"Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms.  First, a facial attack on the complaint's allegations to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.  Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." Holt v. U.S., 46 F.3d 1000, 1002-03 (10th Cir. 1995).  In the present case, even assuming all of the allegations of the Complaint to be true, this Court does not have jurisdiction over this case.

UNM Defendants also bring this Motion pursuant to Fed. R. Civ. P. Rule 12(b)(6), for "failure to state a claim upon which relief can be granted."  Under the legal standard for such a motion, "[a]ll well pleaded facts, as opposed to conclusory allegations, are accepted as true and viewed in the light most favorable to the non-moving party." Teigen v. Refrow, 511 F.3d 1072, 1078 (10th Cir. 2007).  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  In Twombly, the Supreme Court formally overturned the standard found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 127 S. Ct. at 1968.  Instead,

in <u>Twombly</u>, the Supreme Court agreed with an earlier Seventh Circuit holding that "[i]n practice, a complaint…must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." <u>Id.</u> at 1969, citing <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1106; *See also*, 2 Moore's Federal Practice, (3d Ed., 2006) §12.34 at 12-61 – 12-63.  ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.  While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions.")  Finally, a plaintiff can plead himself out of court if he states facts that, if true, would foreclose the plaintiff's claim. <u>Seeds v. Lucero</u>, 177 F. Supp. 2d 1261, 1273 (D.N.M. 2001), citing <u>Conn v. GATX Terminals Corp.</u>, 18 F.3d 417, 419 (7th Cir. 1994).

In the present case, Plaintiff brought a cause of action against Defendants pursuant to 42 U.S.C. § 1983, which states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  In other words, in order for a defendant to be liable for a violation of 42 U.S.C. § 1983, the defendant must be considered a "person."  UNM Defendants, as arms of the state, are not considered to be "persons" for the purposes of the statute.

Plaintiff also fails to state a claim based on either the ADA or the Rehabilitation Act. These acts prevent discrimination, by public entities and recipients of federal funding, respectively, on the basis of a disability.  Plaintiff has failed to state a claim because the facts of

the complaint do not show that he suffers from a disability for the purposes of the statutes, and because these facts do not show that UNM discriminated against him.   Moreover, none of the harm that Plaintiff allegedly suffered was the result of any alleged discrimination on the part of UNM Defendants.   Finally, Plaintiff fails to state a claim for breach of contract, as his contract claim is, in its entirety, based on his claims of violations of the Americans with Disabilities Act and the Rehabilitation Act.   Because Plaintiff fails to allege a violation of these acts, he fails to state a claim for breach of contract.

### B.  THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S 42 U.S.C. SECTION 1983, ADA, AND BREACH OF CONTRACT CLAIMS BECAUSE PLAINTIFF'S SUIT IS BARRED BY THE ELEVENTH AMENDMENT

This Court lacks jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983 and the ADA, because these claims are barred by the Eleventh Amendment to the Constitution. Similarly, the Eleventh Amendment also prevents this Court from exercising supplemental jurisdiction over Plaintiff's common law breach of contract claims.  The Eleventh Amendment to the United States Constitution states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." While the plain language of the Amendment does not include suits by citizens of the same state, the Supreme Court has repeatedly construed the amendment to bar such suits, as well.  *e.g.* Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); Hans v. Louisiana, 134 U.S. 1 (1890).   State agencies are considered "arms of the state" and, as such, are protected by Eleventh Amendment immunity in the same manner as is the state itself.   Ambus v. Granite Bd. of Ed., 995 F.2d 992, 994 (10th Cir. 1993).

In the case of a suit against a state for damages, there are only two exceptions to Eleventh Amendment immunity.  A state can waive its immunity to suit in Federal Court.  However, a state's waiver of immunity under the Eleventh Amendment must be unequivocal.  Ward v. Presbyterian Health Services, 72 F. Supp. 2d 1285, 1291 (D.N.M. 1999).  Also, Congress can expressly abrogate the immunity of a state by creating a statutory cause of action.  Id, 72 F. Supp. 2d at 1289 (D.N.M. 1999), citing Archuleta v. Lacuesta, 131 F.3d 1359, 1361 (10th Cir. 1997).  However, it can only do so pursuant to its powers under Section 5 of the Fourteenth Amendment.  Id., 72 F. Supp. 2d at 1290, citing Seminole Tribe of Florida v. Florida, 517 U.S. 44, 72-73 (1996).

As will be shown below, UNM Defendants are arms of the state of New Mexico, so they are immune to federal jurisdiction unless Eleventh Amendment immunity has been waived by that state or by Congress in exercise of its powers under Section 5 of the Fourteenth Amendment. While the state of New Mexico has waived its sovereign immunity under certain circumstances, it has not waived its Eleventh Amendment immunity against lawsuits in federal court. Moreover, the Supreme Court has unequivocally held that Congress did not intend to abrogate a state's sovereign immunity when it enacted 42 U.S.C. § 1983.  Further, while Congress may have intended to waive a state's Eleventh Amendment immunity when it passed the relevant portion of the ADA, it did not have the authority, under Section 5 of the Fourteenth Amendment, to waive this immunity to suits concerning higher education or licensing exams.  Finally, although this court would ordinarily have supplemental jurisdiction over Plaintiff's breach of contract claim, Eleventh Amendment immunity extends to this claim, as well.

**1.      UNM Defendants are "Arms of the State"**

UNM Defendants are clearly "arms of the state" for the purposes of Eleventh Amendment immunity.  The Tenth Circuit has established a two pronged test for determining whether an agency is an "arm of the state."  "'[T]he court first examines the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state.  Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing.'" Watson v. University of Utah Medical Center, 75 F.3d 569, 574-75 (10th Cir. 1996), citing Haldeman v. State of Wyo. Farm Loan Bd., (10th Cir. 1994).

In Watson, the Tenth Circuit held that the University of Utah was an arm of the state. Regarding the first prong, the court held that the University was a "state controlled entity," because it was largely controlled by a sixteen member Board of Regents, fifteen members of which were appointed by the governor with the consent of the senate, and by a ten member Board of Trustees, eight members of which were appointed by the governor. Watson, 75 F.3d at 575. Regarding the second prong, the University was the beneficiary of a State Risk Management Fund, and the budget of the University was largely controlled by the Board of Regents, the legislature, and the governor.  Id.  In Haldeman, the Wyoming Farm Loan Board earned income from interest on the loans, but the interest was placed in a fund that was "strictly controlled by the legislature." 32 F.3d at 473. Because of this lack of autonomy over the funds, the Board was considered a governmental entity for the purposes of Eleventh Amendment immunity.  Id. at 474.

In the present case, the Board of Regents, as well as the University itself, certainly qualifies as an "arm of the state." Regarding the first prong of the Watson/Haldeman test, the

Board of Regents is entirely controlled by the State.  The Tenth Circuit determined, as a matter of law, that the University of Utah was an arm of the state because all but one member of its Board of Regents was appointed by the governor with the advice and consent of the state senate. In the present case, all seven of the members of the University of New Mexico Board of Regents are appointed by the governor with the advice and consent of the state senate.  N.M. Const. Art. XII, § 13.   The duties of the Board of Regents, and their responsibilities regarding the management of the University of New Mexico, are carefully delineated by statute.  N.M.S.A. § 21-7-1, *et seq*. Quite simply, the Board of Regents of the University of New Mexico is under even tighter state control than its equivalent at the University of Utah, so the Board of Regents of the University of New Mexico is surely an arm of the state.

Regarding the second prong of the Watson/Haldeman test, the Board of Regents is funded by the State.  The Board of Regents is a state agency beneficiary of New Mexico's Risk Management fund. N.M.S.A. 1978, § 41-4-23 (1996 Repl.) Further, the funding of the University is largely controlled by the Board of Regents, in conjunction with the State Department of Higher Education.  *See*, *e.g.*,  N.M.S.A. 1978, §21-1-1, *et seq.*   It is thus clear that the Board of Regents is an arm of the state.  Indeed, the Tenth Circuit has recently found, as a matter of law, that the Board of Regents is an arm of the state.  Ross v. Bd. of Regents of the Univ. of N.M., 599 F.3d 1114, 1117 (10th Cir. 2010) (holding that none of the defendants in the case were considered to be "persons").  Moreover, according to Plaintiff's Complaint, the University of New Mexico Medical School has no separate corporate identity.  It is part of the University, so it is also an arm of the state.  Plaintiff's First Amended Complaint, ¶ 2; N.M.S.A. § 21-7-8 (giving the Board of Regents authority to establish departments, including a medical school, at the

University of New Mexico) Accordingly, UNM Defendants are protected by the Eleventh Amendment as arms of the state.

### 2. The State of New Mexico has not Waived Eleventh Amendment Immunity

While a state can waive its Eleventh Amendment immunity, "the test for determining whether a state has waived its immunity from Federal Court jurisdiction is a stringent one.  A waiver will be found only if the state voluntarily invokes the Federal Court's jurisdiction, or else makes a 'clear declaration' that it intends to submit to that jurisdiction.  The state's consent must be 'unequivocally expressed.'"  Ward, 72 F. Supp. 2d at 1291, citing College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 119 S. Ct. 2219, 2226 (1999)

In Ward, this court held that although the state of New Mexico has abrogated sovereign immunity under certain circumstances, the state Tort Claims Act clearly indicates that jurisdiction over all claims against the state shall be in the state district courts.  72 F. Supp. 2d at 1293. Therefore, the state of New Mexico, including its entities and instrumentalities, has not waived its immunity to suit in the federal courts. Id.

### 3. Congress did not Abrogate Eleventh Amendment Immunity when It Passed 42 U.S.C. § 1983 (Count I)

Where a state has not waived its Eleventh Amendment immunity, the only applicable exception to Eleventh Amendment immunity is a situation where Congress has abrogated the immunity by statute, pursuant to its powers under Section 5 of the Fourteenth Amendment. Ward, 72 F. Supp. 2d at 1290.  For a statute to be deemed to abrogate Eleventh Amendment immunity, a plaintiff has to demonstrate that Congress "unequivocally expressed its intent to abrogate the immunity; and whether Congress has acted pursuant to a valid exercise of power." Id., citing Florida Prepaid Postsecondary Educ. Expense Bd., 527 S. Ct. 2199, 2205 (1999). Plaintiff brought this case pursuant to 42 U.S.C. §1983.

The Supreme Court has determined that, by passing 42 U.S.C. §1983, Congress did not intend to abrogate a state's Eleventh Amendment immunity. *See, e.g.,* <u>Quern v. Jordan</u>, 440 U.S. 332, 345, 99 S. Ct. 1139, 1147 (1979) ("Section 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the states; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the states.") Accordingly, UNM Defendants are protected by Eleventh Amendment immunity for the purposes of Plaintiff's claim under 42 U.S.C. § 1983, so this claim must be dismissed.

**4.      Congress did not have the Power to Abrogate UNM Defendant's Immunity from the Present Americans with Disabilities Act Cause of Action (Count II)**

Plaintiff's claims under the ADA are similarly barred by the Eleventh Amendment.  Even where Congress intends to abrogate Eleventh Amendment immunity, it cannot do so under its general powers under Article I of the U.S. Constitution, but may only do so pursuant to its powers under Section 5 of the Fourteenth Amendment. <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44, 65-73 (1996); <u>Ward</u>, 72 F. Supp. 2d at 1290. This section states that "the Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." As a consequence, Congress only has the power to abrogate Eleventh Amendment immunity in circumstances where it attempts to protect the rights guaranteed by the Fourteenth Amendment, such as the right to due process or equal protection.

However, even where a statute is intended to protect rights guaranteed by the Fourteenth Amendment, it can only abrogate of Eleventh Amendment immunity for suits that arise in context where the statute is actually necessary to correct such violations. *See, e.g.,* <u>Bd. of Trustees of the Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 364 (2001).  ("Accordingly, the ADA can apply to the States only to the extent that the statute is appropriate § 5 legislation.").

Accordingly, Congress' ability to abrogate a state's immunity under the Americans with Disabilities Act is substantially limited.  The section of the Americans With Disabilities Act that is applicable to the present case is Title II of the Act, or 42 U.S.C. § 12131, *et seq.*, which states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.  In the ADA, Congress stated an intention to override Eleventh Amendment immunity; however, it did not have the power to override this immunity for all possible violations of the statute.

Under its powers under Section 5 of the Fourteenth Amendment, Congress can waive a state's Eleventh Amendment immunity from suits for actions that directly violate the Fourteenth Amendment.  U.S. v. Georgia, 546 U.S. 151, 159 (2006).  In addition, "Congress may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct."  Tennessee v. Lane, 541 U.S. 509, 518 (2004).  However, such prophylactic legislation is only valid "if it exhibits a congruence and proportionality between the injury to be prevented or remedied or the means adopted to that end."  Id., 541 U.S. at 520, citing City of Boerne v. Flores, 521 U.S. 507, 520 (1997) For instance, in Garrett, the Supreme Court held that Title I of the Americans with Disabilities Act, which requires reasonable accommodations in employment, did not validly abrogate state entities' Eleventh Amendment immunity, because "the duty to accommodate far exceeds what is constitutionally required."  531 U.S. at 372. Moreover, the congressional findings of fact regarding the ADA did not demonstrate a widespread history of constitutional violations by state employers against disabled persons.  Id., at 370-371.  Accordingly, Title I was not a congruent and proportional response to historic constitutional violations against disabled persons in the workplace. *Compare*

Lane, 541 U.S. at 530-31 (holding that, in the limited class of cases involving access to court systems, a fundamental right, Title II was valid Section 5 legislation)

Accordingly, assuming, *ad arguendo*, that UNM Defendants committed a violation of Title II of the ADA violation, they are immune from suit unless the ADA violation was also a violation of the Fourteenth Amendment or, at the very least, the violation concerned a state activity in which the ADA was a congruent and proportional remedy for historic discrimination. Regarding the first prong, it is clear that Plaintiff has not alleged an independent violation of the Fourteenth Amendment.  While Plaintiff has made the bald assertion that Defendants deprived him of his right to due process, he has not stated any facts in support of this claim.   It is well-settled that education, much less higher education, is not a fundamental right.  *See, e.g.,* San Antonio Ind. Sch. Dist. v. Rodriguez, 411 U.S. 1, 37 (1973). In addition, alleged discrimination based on a disability is subject to rational basis review.  Garrett, 531 U.S. at 366, citing Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432 (1985). Accordingly, an alleged act of discrimination based on disability is not a violation of the plaintiff's due process or equal protection rights if the action is rationally related to a legitimate state interest. Id. at 367.  A refusal to accommodate a person's disability is rationally related to the legitimate state interest of avoiding the expense of such an accommodation.  Id. at 367-68.  Plaintiff has not alleged that UNM Defendants expelled or failed to admit him solely on the basis of the disability, but rather that they failed to arrange for special accommodations for his USMLE test.   Accordingly, Plaintiff has not alleged a violation of his Fourteenth Amendment right to due process.

Moreover, in the context of higher education, Title II of the ADA is not valid prophylactic legislation, because it is not a congruent and proportional response to historical discrimination in higher education.  The Tenth Circuit has not appeared to have made a decision

on this issue, but several other circuit district courts have issued persuasive opinions holding that Title II does not validly abrogate Eleventh Amendment immunity to suits regarding failures to accommodate disability in higher education.  Doe v. Bd. of Trustees of the Univ. of Ill., 429 F. Supp. 2d 930 (N.D. Ill. 2006) (holding that Eleventh Amendment barred ADA claim against university brought by learning disabled student who was dismissed from medical and doctoral programs); Press v. State Univ. of N.Y., 388 F. Supp. 2d 127 (E.D.N.Y. 2005) (holding that Eleventh Amendment barred ADA claim against state university brought by undergraduate with dyslexia who was not permitted to use graphic calculator on mathematics examination); Johnson v. So. Conn. State Univ., 2004 WL 2377225 (D. Conn. 2004) (holding that, because higher education is not a fundamental right, Eleventh Amendment immunity remains intact for ADA claims in public education).  Indeed, despite the exceptions for "undue financial burdens,"

> [t]here is no question, however, that these requirements [of accommodation of disabilities], along with the threat of monetary damages if the entities fail to meet them, impose a significant burden on the states.  In Lane, the Supreme Court determined that Congress, pursuant to section five of the Fourteenth Amendment, could impose these obligations on the states with respect to access to courthouse facilities because access to the courts is a fundamental constitutional right.  The difference in this case is that education, despite its undoubted importance, is not considered by the Supreme Court to be a fundamental constitutional right.  For these reasons, the Court concludes that Title II, as applied to the postgraduate state university program at issue in this case, exceeds Congress's power over section five.

Doe, 429 F. Supp. 2d at 939.  In other words, the provisions of Title II were not a proportionate and congruent solution to historical discrimination against the disabled in higher education. Accordingly, UNM Defendants are protected by Eleventh Amendment immunity to Plaintiff's ADA claims.

Moreover, even assuming, *ad arguendo*, that Title II is, in a *general* sense, valid prophylactic legislation regarding *certain* historical discrimination in higher education, the court should narrow its analysis to the specific issue at bar: whether the provisions of Title II are a proportionate and congruent remedy for Fourteenth Amendment violations against the disabled in educational examinations administered by private corporations.  *See, e.g.*, <u>Guttman v. Khalsa</u>, CIV 03-463 (Doc. No. 142 March 31, 2010) at *24-*26 (limiting the scope of the "class of case"), citing <u>Lane</u>, 531 U.S. at 530.  Indeed, <u>Lane</u> limited its holdings to state court systems, and specifically did not extend it to other public facilities.  531 U.S. at 530.  Again, Plaintiff has not alleged that he required any special accommodations for classes or exams administered by the medical school itself.  Rather, Plaintiff has alleged that UNM Defendants failed to convince Defendant NBME, a private examination company, to accommodate Plaintiff's condition.  Accordingly, in the present case, Congress could only be deemed to have abrogated UNM Defendants' Eleventh Amendment immunity if such abrogation were a congruent and proportional remedy for historical Fourteenth Amendment violations on the part of such companies.  However, these private educational examination companies are not state actors. *See, e.g.,* <u>Boggi v. Medical Review and Accounting Council</u>, 2009 WL 2951022 (E.D. Pa. 2009) (NMBE not a state actor) Therefore, NBME cannot have ever committed Fourteenth Amendment violations, as only state actors can violate the Fourteenth Amendment.  <u>Brophy v. Ament</u>, 2009 WL 5206041 at *7 (D.N.M. 2009), citing <u>Flagg Bros., Inc. v. Brooks</u>, 436 U.S. 149 (1978)  It is clear that Title II is not a congruent and proportional remedy for Fourteenth Amendment violations that, by definition, could not have ever existed.  Quite simply, Congress did not have the power, under the Fourteenth Amendment, to subject a state entity for liability for the actions of private actors.  In short, it is clear that UNM Defendants' Eleventh Amendment

immunity was not validly abrogated for the class of cases that includes the case at bar. Accordingly, the case against UNM Defendants should be dismissed.

**5.     Plaintiff's Breach of Contract Claim (Count III) is Barred by the Eleventh Amendment**

Finally, this court has no supplemental jurisdiction over Plaintiff's state law Breach of Contract claim.  Ordinarily, a federal court can exercise pendent, or supplemental, jurisdiction over state law claims. 28 U.S.C. § 1367.  When state law claims are asserted pursuant to the supplemental jurisdiction of federal courts, these claims are barred by the Eleventh Amendment. As the Supreme Court stated in <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 120-21 (1984) (citations omitted):

> This constitutional bar applies to pendent claims as well. As noted above, pendent jurisdiction is a judge-made doctrine of expediency and efficiency derived from the general Art. III language conferring power to hear all "cases" arising under federal law or between diverse parties. (terming pendent jurisdiction "a doctrine of discretion"). The Eleventh Amendment should not be construed to apply with less force to this implied form of jurisdiction than it does to the explicitly granted power to hear federal claims.

Accordingly, in the absence of state consent to suit in federal court, just as Plaintiff's claims under 42 U.S.C. § 1983 and the ADA are barred by the Eleventh Amendment, this Amendment bars this Court's pendent, or supplemental, jurisdiction over Plaintiff's state law breach of contract claim.  Accordingly, this claim should be dismissed.

**C.  PLAINTIFF FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED AS TO ANY OF HIS CAUSES OF ACTION**

UNM Defendants also move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Even assuming all of Plaintiff's allegations to be true, Plaintiff has failed to state a claim against UNM Defendants as to any of his causes of action.  Accordingly, these causes of action should be dismissed.

1.        **Plaintiff Fails to State a Claim under 42 U.S.C. § 1983 (Count I)**

Plaintiff brings a claim under 42 U.S.C. § 1983, which allows for a cause of action for deprivation of a federal right by persons acting under the color of state law.  As described above, in order to state a claim under 42 U.S.C. § 1983, a Plaintiff must show that a person acting under the color of state law committed a violation of the plaintiff's civil rights.  It is well-settled that the state itself is not a "person" for the purposes of this statute.  <u>Will v. Mich. Dept. of State Police</u>, 491 U.S. 58 (1989) Moreover, it is equally well-settled that state agencies are considered "arms of the state," and thus not "persons" for the purposes of liability under 42 U.S.C. § 1983. <u>Harris v. Champion</u>, 51 F.3d 901, 905-06 (10th Cir. 1995).

UNM Defendants are clearly not "persons" for the purposes of liability under 42 U.S.C. § 1983.  UNM Defendants move to dismiss Plaintiff's Section 1983 claim on the basis of both lack of personhood and Eleventh Amendment immunity.  However, analysis under which both of these defenses are reviewed is identical: for both of these defenses, courts determine whether the defendant is an "arm of the state." <u>Harris</u>, 51 F.3d at 905-06. As described *supra* at 8-10, UNM Defendants are "arms of the state" for Eleventh Amendment immunity purposes.  They are controlled and funded by the state, so they meet both of the prongs of the <u>Watson/Haldeman</u> test used to determine if an entity is an arm of the state.  Accordingly, UNM Defendants are not "persons" for the purposes of 42 U.S.C. § 1983, so this claim should be dismissed.

2.        **Plaintiff Fails to State a Claim under the Americans With Disabilities Act or the Rehabilitation Act (Count II)**

Moreover, Plaintiff fails to state a claim under the Americans with Disabilities Act or the Rehabilitation Act.  This act states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132. The Rehabilitation Act contains substantially the language regarding programs that receive federal funding. 29 U.S.C. § 794. The analysis of a claim under the Rehabilitation Act is substantially identical to that filed under the ADA. "Because the language of disability used in the ADA mirrors that in the Rehabilitation Act, we look to cases construing the Rehabilitation Act for guidance when faced with an ADA challenge and vice versa." Cummings v. Norton, 393 F.3d 1186, 1190 (10th Cir. 2005). Plaintiff fails to state a claim under either of these Acts because he does not suffer from a disability, UNM Defendants did not deny him the benefits of their program, and because UNM Defendants' alleged actions were not the proximate cause of his alleged injury.

### i.  Plaintiff Does not Suffer from a Disability

Plaintiff fails to state a claim under the ADA or the Rehabilitation Act because he does not have a "disability" as defined in the statutes.   A disability is defined as:

> "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment."

42 U.S.C. § 12102(1).

Plaintiff does not claim that he has a record of such an impairment, nor that he was regarded as having such an impairment. Plaintiff does claim that he suffers from an actual impairment. However, in order to state a claim upon which relief can be granted, he is required to state facts that, if true, would show that this impairment substantially limits one or more of his major life activities.   To the contrary, taking all of Plaintiff's factual allegations as true, Plaintiff's Complaint demonstrates that he does *not* suffer from an impairment that significantly limits a major life activity. While neither the ADA nor the Rehabilitation Act define the terms

"substantially limits" or "major life activity," the Tenth Circuit looks to the regulations promulgated under the ADA to construe the meaning of the statute.  McGuinness v. Univ. of N.M. Sch. Of Med., 170 F.3d 974, 978 (10th Cir. 1998).  Federal courts have produced a substantial body of law regarding these regulations in the employment context, in which they considered allegations that a plaintiff's condition substantially impaired his or her ability to work. McGuinness, 170 F.3d at 978. Moreover, when considering ADA cases in the realm of education, in which a plaintiff alleges that he has a condition that impairs his ability to read or learn, the Tenth Circuit generally draws analogies to the principles developed in ADA employment cases. Id.

Under the principles developed in employment cases, "an individual does not suffer from a disability under the ADA if his disability does not prevent him from performing a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  Siemon v. AT&T Corp., 117 F.3d 1173, 1176 (10th Cir. 1997), quoting 29 C.F.R. sec, 1630.2(j)(3)(1).  Because a condition is only a disability in the context of employment if it prevents a person from performing a "broad class of jobs," it is not enough for a plaintiff to show that he had difficulty with one particular job or situation. For example, an airline mechanic whose impaired vision prevented him from taxiing aircraft was not "disabled" for the purposes of the Americans with Disabilities Act or the Rehabilitation Act.  McDonald v. Delta Air Lines, Inc., 94 F.3d 1437 (10th Cir. 1996).  Indeed, "it is the actual effect on the individual's life that is important under the ADA.  For the purposes of the ADA, inability to pursue one career, such as medicine, does not constitute a severe impact on an individual's life." McGuinness, 170 F.3d at 979, citing Welsh v. City of Tulsa, 977 F.2d 1415, 1419 (10th Cir. 1992).

Drawing an analogy to the educational context, it is thus clear that a condition that generally allows a person to study and learn is not a "disability," even if it creates some difficulty for the student.  The Tenth Circuit and other courts have held that this is indeed the case, even if the student needs to take steps to mitigate the condition.  For instance, in McGuinness, a case very similar to the one at bar, the plaintiff had been an otherwise successful student who suffered from anxiety in math and chemistry courses.  176 F.3d at 976.  However, the plaintiff managed to overcome these difficulties using revised study habits, and earned a degree in physiological psychology. Id. He then enrolled in medical school, but failed to attain satisfactory grades in his first year.  Id. at 977.  This required him to repeat his first year's courses, so he sued the medical school under the ADA. Id. The Tenth Circuit upheld the decision granting summary judgment on his claim, stating that his condition was not so severe that it constituted a "disability," pointing out that "we must consider the plaintiff's ability to mitigate his impairment in determining if that impairment substantially limits a major life activity.  Just as eyeglasses correct impaired vision, so that it does not constitute a disability under the ADA, an adjusted study regimen can mitigate the effects of test anxiety."   Id. at 979.

Other courts have reached similar conclusions.  Indeed, the Southern District of Texas considered the case of a child with Irlen's syndrome, from which Plaintiff also claims to suffer. The child was able to mitigate the effects of the disease using overlay filers on eyeglasses, and thereby earned passing grades, just as Plaintiff was able to do.  The Court held that the student was not disabled because his passing grades showed that the condition did not have "a substantially limiting affect [sic] on his ability to learn." Ballard v. Kinkaid Sch., 147 F. Supp. 2d 603, 610-11 (S.D. Tex. 2000), withdrawn from N.R.S. bound volume.

Moreover, the District of Massachusetts considered a case in which a university dental school dismissed a person for failing to perform at an acceptable academic level.  Pacella v. Tufts Univ. Sch. of Dental Med.,  66 F. Supp. 2d (D. Mass. 1999) The person in question suffered from a severe vision disorder that was, nevertheless, largely corrected by eyeglasses, leaving only some problems with fine print and depth perception.  66 F. Supp. 2d at 237.  The Pacella court held that Plaintiff's vision problems did not constitute a disability, "even if [the plaintiff's] impediments substantially limited his ability to attend dental school, 'an impairment that interferes with an individual's ability to perform a particular function, but does not significantly decrease that individual's ability to obtain a satisfactory education otherwise, does not substantially limit the major life activity of learning." Id. at 239.

In the present case, it is clear that Plaintiff does not suffer from a condition that substantially limits his major life activity of learning.  This case is very similar to McGuinness, Ballard, and Pacella.  Indeed, by his own admission, Plaintiff is even less impaired than were the plaintiffs in those cases.  Plaintiff had little difficulty in grade school, high school and college, performing very well in school, especially in the areas of math and science, without any mitigating factors.  Plaintiff's Amended Complaint, ¶¶ 12, 21.  While Plaintiff finally had some trouble when he started medical school, he was able to overcome the problem using special eyeglasses and medication, and managed to pass the first two years of medical school.  Id., ¶¶ 22-23.  Under the precedents set in Pacella and McGuinness, it is clear that, even if Plaintiff's condition substantially impaired his ability to attend medical school, it would not be sufficient to constitute a disability.  Indeed, Plaintiff's Complaint does not even allege that much; Plaintiff stated that he passed his classes for the first two years of medical school, and only alleged that he

met difficulty with the specific conditions of the USMLE exam. Quite simply, this is not sufficient to demonstrate a limitation of a substantial life activity.

### ii. UNM Defendants did not Discriminate Against Plaintiff

In addition, Plaintiff has not demonstrated that UNM Defendants discriminated against him due to his condition. The ADA and Rehabilitation Act require *reasonable* modifications, or accommodations, to be made to a program, if these modifications are required to allow a qualified individual with a disability to benefit from the program. However, all of Plaintiff's requested accommodations are unnecessary or unreasonable. It is clear that Plaintiff does not require any modification in the medical school program itself. Plaintiff succeeded in his medical school classes with the help of the colored eyeglasses and medication. Plaintiff's sole complaint against UNM Defendants is that they did not assist him in receiving accommodations from NBME. UNM Defendants were not required to provide this assistance. Indeed, a public entity need not make accommodations for a disability if such modifications would "fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). Plaintiff's fundamental request for modifications on the part of UNM Defendants was for their assistance in convincing Defendant NBME to accommodate his condition. In short, Plaintiff requested a modification that would fundamentally alter the nature of the University of New Mexico, from that of an institution of higher learning to that of an advocacy organization for the disabled. UNM Defendants were not required to fundamentally alter their mission in this manner.

### iii. UNM Defendants' Alleged Actions were not the Proximate Cause of Plaintiff's Alleged Injury

Finally, Plaintiff's failure to pass the USMLE, even if it resulted from his Irlen's Syndrome, was not proximately caused by UNM Defendants' alleged failure to provide accommodation for the condition. In order to state a claim under the ADA, a plaintiff is required

to state facts that, if true, show that the alleged harm was the natural or foreseeable result of the alleged discriminatory action.  BD v. Debuono, 193 F.R.D. 117, 140 (S.D.N.Y. 2000); *See also* Young v. Dillon Cos., 468 F.3d 1243, 1253 (10th Cir. 2006) (In a Title VII case, court held that the plaintiff was required to show that the alleged discriminatory acts were the proximate cause of the adverse action); Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006) (liability for civil rights violations is only for harm that proximately resulted from the violation).

In BD, the plaintiff, the mother of an autistic child, claimed that, because of the delay in receiving certain accommodations from government programs, the mother was forced to quit her job.  However, the district court held that the plaintiff could not maintain a claim on this basis, because it alleged "damages that are both unforeseeable and speculative.  The extension of a period during which the parent of an autistic child is unemployed neither flows directly nor results naturally and probably from the failure to provide early intervention services to that child."  193 F.R.D. at 140.

The present case is analogous to BD.  In the present case, Plaintiff has alleged that Defendant NBME failed to provide accommodations for Plaintiff to take the USMLE exam.  Plaintiff speculates that, if UNM Defendants had provided accommodations for his condition, NMBE would have followed suit, despite the fact that Plaintiff clearly did not need accommodations from UNM Defendants.  However, Plaintiff states that the reason NBME did not accept Plaintiff's appeal was Plaintiff's inability to assemble the requisite paperwork in time.  Plaintiff's Amended Complaint, ¶ 32-33.  Thus, UNM Defendants' alleged failure to accommodate was irrelevant to NBME's decision.  Plaintiff's allegation that UNM Defendants could have done anything to alter NBME's decision is pure speculation.  In any event, Plaintiff's Complaint states no facts that would indicate that NMBE's refusal to allow the appeal flowed

naturally from any action or inaction on the part of UNM Defendants.  Accordingly, Plaintiff's claim against UNM Defendants should be dismissed.

Finally, Plaintiff's cause of action under the Rehabilitation Act should be dismissed for the same reasons why his ADA claim should be dismissed.  Plaintiff does not suffer from a disability according to the definition of the term provided by both statutes.  Moreover, UNM Defendants did not discriminate against him on the basis of his disability.  Plaintiff was able to enjoy the benefits of the program offered by UNM Defendants.  Any possible failures to accommodate Plaintiff's disability were on the part of Defendant NBME.  In addition, to state a claim under the Rehabilitation Act, a Plaintiff must also state facts that allege that UNM Defendants were funded by the federal government.  29 U.S.C. § 794.  Plaintiff has not done so. Accordingly, his causes of action under both the ADA and the Rehabilitation Act should be dismissed.

### 3.        Plaintiff has Failed to State a Claim for Breach of Contract (Count III)

Finally, Plaintiff fails to state a claim against UNM Defendants for breach of contract. Plaintiff bases his cause of action for breach of contract on his contention that he entered into a written contract with UNM Defendants, and that this "contract has express and implied provisions requiring Defendant UNM to abide by laws pertaining to physical disabilities and to assist and accommodate the Plaintiff."  Accordingly, all of Plaintiff's allegations of breach of contract are based on his contentions that NBME failed to accommodate his purported disability. Even if Plaintiff did enter into this alleged contract, Plaintiff does not state facts that would show that UNM Defendants breached the contract. Plaintiff does not allege that he suffers from a disability, and the alleged failures to accommodate his condition were solely the fault of NBME.

Accordingly, Plaintiff does not state a claim for breach of contract against UNM Defendants, so this count should be dismissed.

### D.  THE UNIVERSITY OF NEW MEXICO SCHOOL OF MEDICINE IS NOT A PROPER PARTY TO THIS LAWSUIT, SO IT SHOULD BE DISMISSED

In the alternative, the University of New Mexico School of Medicine ("School of Medicine") moves that this Honorable Court dismiss it as a party pursuant to Fed. R. Civ. P. Rule 21, which provides for the dismissal of particular parties on just terms.  School of Medicine requests this relief on the ground that it was misjoined as a party by Plaintiff.  Fed. R. Civ. P. Rule 17(b)(3) states that, in order to determine whether an entity has the capacity to be sued, a court should look at the law of the state where the court sits.  School of Medicine is a part of the University of New Mexico, has no separate identity from UNM, and was established by Board of Regents pursuant to its powers under N.M.S.A. § 21-7-8.  Board of Regents has the ultimate authority over the operations of the University of New Mexico, and is the proper party to any lawsuit against the University.  N.M.S.A. §§ 21-7-3 & 4.

### III. CONCLUSION

The Eleventh Amendment bars federal jurisdiction over Plaintiff's claims against UNM Defendants under the Americans With Disabilities Act and 42 U.S.C. § 1983, as well as supplemental jurisdiction over his breach of contract claim.  In addition, Plaintiff has failed to state a claim upon which relief can be granted as to any of his causes of action against UNM Defendants.  Accordingly, Defendants Board of Regents of the University of New Mexico and the University of New Mexico School of Medicine respectfully request that this Honorable dismiss all of Plaintiff Chad Cunningham's claims against them.  In the alternative, Defendant University of New Mexico respectfully requests that this Honorable Court dismiss it from the above styled cause, as it is not a proper party to this lawsuit.

Respectfully submitted,

CADIGAN & PARK, P.C.

By **/s/ Alfred A. Park**
    Alfred A. Park
    Lawrence M. Marcus
    *Counsel for Defendants UNM Board of*
       *Regents & UNM School of Medicine*
    3840 Masthead Street, N.E.
    Albuquerque, New Mexico  87109
    (505) 830-2076

I hereby certify that a true and correct copy
of the foregoing document was mailed to:

Dennis W. Montoya
*Montoya Law, Inc.*
Post Office Box 15235
Rio Rancho, New Mexico  87174-0235

on this   23rd   day of September 2010.

**/s/ Alfred A. Park**
Alfred A. Park