# Exhibit B

Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **CHAD CUNNINGHAM,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **UNIVERSITY OF NEW MEXICO** | ) | **No. 10-CV-00451-BB-RLP** |
| **BOARD OF REGENTS, UNIVERSITY** | ) | |
| **OF NEW MEXICO SCHOOL OF** | ) | |
| **MEDICINE and the NATIONAL** | ) | |
| **BOARD OF MEDICAL EXAMINERS,** | ) | |
| | ) | |
| Defendant. | | |

## DECLARATION OF CATHERINE FARMER, PSY.D.

1.     I am currently employed by the National Board of Medical Examiners ("NBME") as Manager, Disability Services and ADA Compliance Officer, Testing Programs.    As Manager, my duties include, among other things, operational responsibility for the office that receives and processes requests for test accommodations for the United States Medical Licensing Examination ("USMLE").  I am responsible for making decisions whether to approve requests for accommodations on Steps 1 and 2 of the USMLE as well as decisions concerning the appropriateness of the accommodations to be provided.

-1-

2.      The NBME is responsible for providing for the administration of USMLE under standard conditions in order to ensure the integrity and meaning of the scores and in order to protect public safety and the public's interest in the medical licensure process. For this reason, the NBME takes seriously its duty to ensure that no examinee or group of examinees receives unfair advantage over another.

3.      It is also the responsibility of the NBME to ensure that applicants who request accommodations and have documented disabilities as defined by the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADA"), receive reasonable and appropriate accommodations when taking USMLE.  The purpose of providing reasonable and appropriate accommodations is to afford examinees with disabilities equal access to the examination process.  The public should have the benefit of the skills of qualified physicians who may be disabled.

4.      The NBME's Office of Disability Services is responsible for implementing the USMLE's policy of providing test accommodations to individuals with recognized disabilities under the ADA. Upon receipt and review of an examinee's request for test accommodations and submission of the supporting documentation, NBME staff reviews the submission to ascertain whether there is adequate documentation to make an informed decision with regard to appropriate accommodations.  Detailed guidelines concerning the type of information applicants should include with their requests is made available on the USMLE website.  In the event a request is found to be lacking sufficient supporting

-2-

documentation to render an informed decision, NBME notifies the examinee in writing and requests additional information.

5.      Examples of supporting documents are listed in the Guidelines to Request Test Accommodation ("Guidelines"), made available at the USMLE web site.      The Guidelines are attached to this declaration as **Exhibit A**.

6.      On May 13, 2009, NBME received a request for test accommodations on Step 1 of the USMLE from Chad A. Cunningham ("Mr. Cunningham"), a student at the University of New Mexico School of Medicine, pursuant to his registration for Step 1 on the same day.  Mr. Cunningham reported the nature of his disability to be a reading disability diagnosed in 2006 and 2009, Scotopic Sensitivity Syndrome diagnosed in 2006, and "Other" medical impairment(s) diagnosed in 2006. Mr. Cunningham requested the test accommodations of additional break time over two days or double time to take the Step 1 exam.  He also requested to adjust the computer screen background color to blue or green and to decrease the amount of fluorescent lighting in the testing room.      Mr. Cunningham's application form and letter are attached as **Exhibit B**.

7.      Our preliminary review of Mr. Cunningham's submission revealed that it contained insufficient information to make an informed decision regarding his request for test accommodations. On May 20, 2009, NBME sent Mr. Cunningham a letter informing him that the information submitted with his request for test accommodations was incomplete and requested additional information, such as objective records documenting

-3-

a developmental history of impairment in early learning, grade reports and transcripts, standardized test results, or contemporaneous reports from his teachers, tutors or past treatment providers describing the nature of his alleged reading problems. In addition, NBME requested standard scores for the tests that were administered by Dr. Griffin to diagnose his alleged reading disorder so that the NBME could evaluate the extent to which Mr. Cunningham currently meets diagnostic criteria for a reading disability, and the extent to which he is substantially limited in a major life activity. A copy of this letter is attached as **Exhibit C**.

      8.    Mr. Cunningham did not respond to NBME's request for additional documentation, either to provide the requested documents or to confirm that no further documentation would be submitted. Nor did he request an extension of his testing eligibility period to provide himself time to gather the required documentation. Instead, Mr. Cunningham elected **to take** the Step 1 USMLE without accommodations on June 24, 2009. This represented his second attempt on Step 1. Mr. Cunningham's request for test accommodations was deemed closed since he elected to test under standard conditions. NBME never issued a final determination with respect to Mr. Cunningham's request for accommodations.

      9.    To date, Mr. Cunningham has not reapplied to take USMLE and has no pending request for test accommodations.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on October  4 , 2010.

Catherine Farmer, Psy.D.

# Exhibit A

Exhibit A

United States Medical Licensing Examination™



# GUIDELINES TO REQUEST TEST ACCOMMODATIONS

NB000059

# Table of Contents

Test Accommodations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

General Guidelines for all Disabilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Learning Disorders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Attention-Deficit/Hyperactivity Disorder (ADHD) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Guidelines for Documenting Vision Impairments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

What to Do . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

NB000060

## Test Accommodations

### How to Request Test Accommodations

1. Read the Guidelines carefully.
   - Share them with the professional who will be helping you prepare your documentation.

2. Read the instructions for completing the Applicant's Request for Test Accommodations.

3. Complete the **Step 1 and Step 2 Clinical Knowledge Applicant's Request for Test Accommodations** or the **Step 2 Clinical Skills Applicant's Request for Test Accommodations.**
   - Be sure to sign the request form where indicated.

4. If appropriate, have your medical school complete the **Certification of Prior Test Accommodations** form.

5. Attach documentation of the disability and your need for accommodation.
   - Compare your documentation with the information listed in these guidelines to ensure a complete submission.
   - Incomplete documentation will delay processing of your request.

6. Send your request for test accommodations and supporting documentation to the appropriate registration entity as noted below:

| Examination: | Type of applicant: | To request test accommodations, contact: |
|---|---|---|
| Step 1<br>or<br>Step 2<br>(CK or CS) | Students and graduates of medical schools in the United States and Canada | Disability Services<br>National Board of Medical Examiners<br>3750 Market Street<br>Philadelphia, PA 19104-3190<br>(215) 590-9509 |
| Step 1<br>or<br>Step 2<br>(CK or CS) | Students and graduates of medical schools outside the United States and Canada | Test Accommodations Coordinator<br>Educational Commission for Foreign Medical Graduates<br>3624 Market Street<br>Philadelphia, PA 19104-2685 USA<br>(215) 386-5900 |
| Step 3 | All medical school graduates who have passed Step 1 and Step 2 | Coordinator for Special Examination Services<br>Federation of State Medical Boards<br>PO Box 619850<br>Dallas, TX 75261-9850 |

**Mail your request for test accommodations to the address above *at the same time* you mail your examination application to the address shown in the registration materials.**

NB000061

**DO NOT SUBMIT:**

- Original documents; keep the original and submit a copy
- Research articles, resumes, curriculum vitas
- Handwritten letters from physicians or evaluators
- Documentation previously submitted to Disability Services
- Documentation previously submitted to your registration entity
- Previous correspondence from Disability Services
- Multiple copies of documentation (i.e., faxed and mailed copies of a document)
- Staples, clips, binders, page protectors, folders, or similar items

*Please note that submitting duplicate documentation and/or bound documentation may delay a decision regarding your request as all documentation must be processed.*

**DO SUBMIT:**

- Legible copies
- All documents in English. You are responsible for providing certified English translations of foreign-language documentation
- Typed or printed letters and reports from evaluators
- Documentation from childhood if you are requesting accommodations based on a developmental disorder, i.e. LD, ADHD, Dyslexia
- Documentation of your functional impairment in activities *beyond test-taking*
- Documentation of your functional impairment *beyond self-report*

NB000062

# Introduction

The United States Medical Licensing Examination Program provides reasonable and appropriate accommodations in accordance with the Americans with Disabilities Act for individuals with documented disabilities who demonstrate a need for accommodation. Examinees are informed of the availability of test accommodations in the *USMLE Bulletin of Information*, Application Instructions, and at the USMLE website.

The following information is provided for examinees, evaluators, medical school student affairs staff, faculty and others involved in the process of documenting a request for test accommodations. Applicants requesting test accommodations should share these guidelines with their evaluator, therapist, treating physician, etc., so that appropriate documentation can be assembled to support the request for test accommodations.

The Americans with Disabilities Act of 1990 (ADA) and accompanying regulations define a person with a disability as someone with a physical or mental impairment that substantially limits one or more major life activities such as walking, seeing, hearing, or learning. The purpose of documentation is to validate that the individual is covered under the Americans with Disabilities Act as a disabled individual.

The purpose of accommodations is to provide equal access to the USMLE testing program. Accommodations "match up" with the identified functional limitation so that the area of impairment is alleviated by an auxiliary aid or adjustment to the testing procedure. *Functional limitation refers to the behavioral manifestations of the disability that impede the individual's ability to function*, i.e., what someone cannot do on a regular and continuing basis as a result of the disability. For example, a functional limitation might be impaired vision so that the individual is unable to view the examination in the standard font size. An appropriate accommodation might be text enlargement. It is essential that the documentation provide a clear explanation of the functional impairment and a rationale for the requested accommodation.

While presumably the use of accommodations in the test activity will enable the individual to better demonstrate his/her knowledge mastery, accommodations are not a guarantee of improved performance, test completion or a passing score.

NB000063

## General Guidelines for all Disabilities

The following guidelines are provided to assist the applicant in documenting a need for accommodation based on an impairment that substantially limits one or more major life activities. Documentation submitted in support of a request may be referred to experts in the appropriate area of disability for a fair and impartial professional review.

The examinee must personally initiate a written request for accommodations or for release of information relative to an accommodations request. All documentation submitted in support of a request for accommodations is confidential. No information concerning a request for accommodations is released without a written request from the examinee. Accommodations requests by a third party (such as an evaluator or medical school) cannot be honored.

To support a request for test accommodations, please submit the following:

1.  Completed Step 1 and Step 2 CK Applicant's Request for Test Accommodations or Step 2 CS Applicant's Request for Test Accommodations.

2.  A detailed, comprehensive written report describing your disability and its severity and justifying the need for the requested accommodations.

   The following characteristics are expected of all documentation submitted in support of a request for accommodations. Documentation must:

   **state a specific diagnosis of the disability.**
   A professionally recognized diagnosis for the particular category of disability is expected, e.g., the DSM-IV diagnostic categories for learning disorders.

   **be current.**
   Because the provision of reasonable accommodations is based on assessment of the current impact of the examinee's disability on the testing activity, it is in the individual's best interest to provide recent documentation. As the manifestations of a disability may vary over time and in different settings, in most cases an evaluation should have been conducted within the past three years, e.g., visual or neuromuscular conditions are often subject to change and should be updated for current functioning.

   **describe the specific diagnostic criteria and name the diagnostic tests used, including date(s) of evaluation, specific test results and a detailed interpretation of the test results.**
   This description should include the results of diagnostic procedures and tests utilized and should include relevant educational, developmental, and medical history. Specific test results should be reported to support the diagnosis, e.g., documentation for an examinee with multiple sclerosis should include specific findings on the neurological examination including functional limitations and MRI or other studies, if relevant.

   Diagnostic methods used should be appropriate to the disability and current professional practices within the field. Informal or non-standardized evaluations should be described in enough detail that other professionals could understand their role and significance in the diagnostic process.

   **describe in detail the individual's limitations due to the diagnosed disability, i.e., a demonstrated impact on functioning vis-a-vis the USMLE and explain the relationship of the test results to the identified limitations resulting from the disability.**
   The current functional impact on physical, perceptual and cognitive abilities should be fully described, e.g., an examinee with macular degeneration has reduced central vision which limits the ability to read.

   **recommend specific accommodations and/or assistive devices including a detailed explanation of why these accommodations or devices are needed and how they will reduce the impact of the identified functional limitations,** e.g., a learning disabled individual who has difficulty decoding might require an oral rendition of the exam.

NR000064

**establish the professional credentials of the evaluator that qualify him/her to make the particular diagnosis, including information about license or certification and specialization in the area of the diagnosis.** The evaluator should present evidence of comprehensive training and direct experience in the diagnosis and treatment of adults in the specific area of disability.

3. If no prior accommodations have been provided, the qualified professional expert should include a detailed explanation as to why no accommodations were given in the past and why accommodations are needed now.

NR000065

# Learning Disorders

Documentation for applicants submitting a request for accommodations based on a learning disorder or other cognitive impairment should contain all of the items listed in the General Guidelines section. The following information explains the additional issues documentation must address relative to learning disorders.

1.  The evaluation must be conducted by a qualified professional.
    The diagnostician must have comprehensive training in the field of learning disorders and must have comprehensive training and direct experience in working with an adult population.

2.  Testing/assessment must be current.
    The determination of whether an individual is significantly limited in functioning according to Americans with Disabilities Act (ADA) criteria is based on assessment of the current impact of the impairment. (See General Guidelines). A developmental disorder such as a learning disorder originates in childhood and, therefore, information which demonstrates a history of impaired functioning should also be provided.

3.  Documentation must be comprehensive.
    Objective evidence of a substantial limitation in cognition or learning must be provided. At a minimum, the comprehensive evaluation should include the following:

    **A diagnostic interview and history taking**
    Because learning disorders are commonly manifested during childhood, though not always formally diagnosed, relevant historical information regarding the individual's academic history and learning processes in elementary, secondary and postsecondary education should be investigated and documented. The report of assessment should include a summary of a comprehensive diagnostic interview that includes relevant background information to support the diagnosis. In addition to the candidate's self-report, the report of assessment should include:

    *   A description of the presenting problem(s);
    *   A developmental history;
    *   Relevant academic history including results of prior standardized testing, reports of classroom performance and behaviors including transcripts, study habits and attitudes and notable trends in academic performance;
    *   Relevant family history, including primary language of the home and current level of fluency in English;
    *   Relevant psychosocial history;
    *   Relevant medical history including the absence of a medical basis for the present symptoms;
    *   Relevant employment history;
    *   A discussion of dual diagnosis, alternative or co-existing mood, behavioral, neurological and/or personality disorders along with any history of relevant medication and current use that may impact the individual's learning; and
    *   Exploration of possible alternatives that may mimic a learning disorder when, in fact, one is not present

    **A psychoeducational or neuropsychological evaluation**
    The psychoeducational or neuropsychological evaluation must be submitted on the letterhead of a qualified professional and it must provide clear and specific evidence that a learning or cognitive disability does or does not exist.

    Assessment must consist of a comprehensive battery of tests

    A diagnosis must be based on the aggregate of test results, history and level of current functioning. It is not acceptable to base a diagnosis on only one or two subtests.

    Objective evidence of a substantial limitation to learning must be presented.

    Tests must be appropriately normed for the age of the patient and must be administered in the designated standardized manner.

NB000066

Minimally, the domains to be addressed should include the following:

### Cognitive Functioning
A complete cognitive assessment is essential with all subtests and standard scores reported. Acceptable measures include but are not limited to: Wechsler Adult Intelligence Scale-III (WAIS-III); Woodcock Johnson Psychoeducational Battery-III (WJ-III): Tests of Cognitive Ability; Kaufman Adolescent and Adult Intelligence Test.

### Achievement
A comprehensive achievement battery with all subtests and standard scores is essential. The battery must include current levels of academic functioning in relevant areas such as reading (decoding and comprehension) and mathematics. Acceptable instruments include, but are not limited to, the Woodcock-Johnson Psychoeducational Battery-III (WJ-III): Tests of Achievement; The Scholastic Abilities Test for Adults (SATA); Woodcock Reading Mastery Tests-III (WRMT).

Specific achievement tests are useful instruments when administered under standardized conditions and when interpreted within the context of other diagnostic information. The Wide Range Achievement Test-3 (WRAT-3) and the Nelson-Denny Reading Test are not comprehensive diagnostic measures of achievement and therefore neither is acceptable if used as the sole measure of achievement.

### Information Processing
Specific areas of information processing (e.g., short- and long-term memory, sequential memory, auditory and visual perception/processing, auditory and phonological awareness, processing speed, executive functioning, motor ability) must be assessed. Acceptable measures include, but are not limited to, the Detroit Tests of Learning Aptitude - Adult (DTLA-A), Wechsler Memory Scale-III (WMS-III), information from the Woodcock Johnson Psychoeducational Battery-III (WJ-III): Tests of Cognitive Ability, as well as other relevant instruments that may be used to address these areas.

### Other Assessment Measures
Other formal assessment measures or nonstandard measures and informal assessment procedures or observations may be integrated with the above instruments to help support a differential diagnosis or to disentangle the learning disability from co-existing neurological and/or psychiatric issues. In addition to standardized test batteries, nonstandardized measures and informal assessment procedures may be helpful in determining performance across a variety of domains.

**Actual test scores must be provided (standard scores where available).** Evaluators should use the most recent form of tests and should identify the specific test form as well as the norms used to compute scores. It is helpful to list all test data in a score summary sheet appended to the evaluation. Age norms where available should be provided.

**Records of academic history should be provided.**
Because learning disabilities are most commonly manifested during childhood, relevant records detailing learning processes and difficulties in elementary, secondary and postsecondary education should be included. Such records as grade reports, transcripts, teachers' comments and the like will serve to substantiate self-reported academic difficulties in the past and currently.

**Provide score reports for standardized tests** (e.g., SAT, ACT, GRE, GMAT, MCAT) and indicate what, if any, accommodations were provided.

**A differential diagnosis must be reviewed and various possible alternative causes for the identified problems in academic achievement should be ruled out.** The evaluation should address key constructs underlying the concept of learning disabilities and provide clear and specific evidence of the information processing deficit(s) and how these deficits currently impair the individual's ability to learn. No single test or subtest is a sufficient basis for a diagnosis.

NB000067

- The differential diagnosis must demonstrate that:
- Significant difficulties persist in the acquisition and use of listening, speaking, reading, writing or reasoning skills.
- The problems being experienced are not primarily due to lack of exposure to the behaviors needed for academic learning or to an inadequate match between the individual's ability and the instructional demands.

**A clinical summary must be provided.**

A well-written diagnostic summary based on a comprehensive evaluative process is a necessary component of the report. Assessment instruments and the data they provide do not diagnose; rather, they provide important data that must be integrated with background information, historical information and current functioning. It is essential then that the evaluator integrate all information gathered in a well-developed clinical summary. The following elements must be included in the clinical summary:

- Demonstration of the evaluators having ruled out alternative explanations for the identified academic problems as a result of poor education, poor motivation and/or study skills, emotional problems, attentional problems and cultural or language differences;
- Indication of how patterns in cognitive ability, achievement and information processing are used to determine the presence of a learning disability;
- Indication of the substantial limitation to learning presented by the learning disability and the degree to which it impacts the individual in the context of the USMLE; and
- Indication as to why specific accommodations are needed and how the effects of the specific disability are mediated by the recommended accommodation(s).

Problems such as test anxiety, English as a second language (in and of itself), slow reading without an identified underlying cognitive deficit or failure to achieve a desired academic outcome are not learning disabilities and therefore are not covered under the Americans with Disabilities Act.

**Each accommodation recommended by the evaluator must include a rationale.**

The evaluator must describe the impact the diagnosed learning disability has on a specific major life activity as well as the degree of significance of this impact on the individual. The diagnostic report must include specific recommendations for accommodations and a detailed explanation as to why each accommodation is recommended. Recommendations must be tied to specific test results or clinical observations. The documentation should include any record of prior accommodation or auxiliary aids, including any information about specific conditions under which the accommodations were used and whether or not they were effective. However, a prior history of accommodation, without demonstration of a current need, does not in and of itself warrant the provision of a like accommodation. If no prior accommodation(s) has been provided, the qualified professional expert should include a detailed explanation as to why no accommodation(s) was used in the past and why accommodation(s) is needed at this time.

NB000068

## Attention-Deficit/Hyperactivity Disorder (ADHD)

Documentation for applicants submitting a request for accommodations based on an Attention-Deficit/Hyperactivity Disorder (ADHD) should contain all of the items listed in the General Guidelines section. The following information explains the additional issues documentation must address relative to ADHD.

1.   **The evaluation must be conducted by a qualified diagnostician.**

     Professionals conducting assessments and rendering diagnoses of ADHD must be qualified to do so. Comprehensive training in the differential diagnosis of ADHD and other psychiatric disorders and direct experience in diagnosis and treatment of adults is necessary. The evaluator's name, title and professional credentials, including information about license or certification as well as the area of specialization, employment and state in which the individual practices should be clearly stated in the documentation.

2.   **Testing/assessment must be current.**

     The determination of whether an individual is "significantly limited" in functioning is based on assessment of the current impact of the impairment on the USMLE testing program. (See General Guidelines)

3.   **Documentation necessary to substantiate the Attention-Deficit/Hyperactivity Disorder must be comprehensive.**

     Because ADHD is, by definition, first exhibited in childhood (although it may not have been formally diagnosed) and in more than one setting, objective, relevant, historical information is essential. Information verifying a chronic course of ADHD symptoms from childhood through adolescence to adulthood, such as educational transcripts, report cards, teacher comments, tutoring evaluations, job assessments and the like are necessary.

     a.   The evaluator is expected to review and discuss DSM-IV diagnostic criteria for ADHD and describe the extent to which the patient meets these criteria. The report must include information about the specific symptoms exhibited and document that the patient meets criteria for long-standing history, impairment and pervasiveness.
     b.   A history of the individual's presenting symptoms must be provided, including evidence of ongoing impulsive/hyperactive or inattentive behaviors (as specified in DSM-IV) that significantly impair functioning in two or more settings.
     c.   The information collected by the evaluator must consist of more than self-report. Information from third party sources is critical in the diagnosis of adult ADHD. Information gathered in the diagnostic interview and reported in the evaluation should include, but not necessarily be limited to, the following:

          •   History of presenting attentional symptoms, including evidence of ongoing impulsive/hyperactive or inattentive behavior that has significantly impaired functioning over time;
          •   Developmental history;
          •   Family history for presence of ADHD and other educational, learning, physical or psychological difficulties deemed relevant by the examiner;
          •   Relevant medical and medication history, including the absence of a medical basis for the symptoms being evaluated;
          •   Relevant psychosocial history and any relevant interventions;
          •   A thorough academic history of elementary, secondary and postsecondary education;
          •   Review of psychoeducational test reports to determine if a pattern of strengths or weaknesses is supportive of attention or learning problems;
          •   Evidence of impairment in several life settings (home, school, work, etc.) and evidence that the disorder significantly restricts one or more major life activities.
          •   Relevant employment history;
          •   Description of current functional limitations relative to an educational setting and to USMLE in particular that are presumably a direct result of the described problems with attention;
          •   A discussion of the differential diagnosis, including alternative or co-existing mood, behavioral, neurological and/or personality disorders that may confound the diagnosis of ADHD;

NB000069

- Exploration of possible alternative diagnoses that may mimic ADHD; and

4. **Relevant Assessment Batteries**

A neuropsychological or psychoeducational assessment may be necessary in order to determine the individual's pattern of strengths or weaknesses and to determine whether there are patterns supportive of attention problems. Test scores or subtest scores alone should not be used as the sole basis for the diagnostic decision. Scores from subtests on the Wechsler Adult Intelligence Scale - III (WAIS - III), memory functions tests, attention or tracking tests or continuous performance tests do not in and of themselves establish the presence or absence of ADHD. They may, however, be useful as one part of the process in developing clinical hypotheses. Checklists and/or surveys can serve to supplement the diagnostic profile but by themselves are not adequate for the diagnosis of ADHD. When testing is used, standard scores must be provided for all normed measures.

- Age norms where available

5. **Identification of DSM-IV Criteria**

A diagnostic report must include a review of the DSM-IV criteria for ADHD both currently and retrospectively and specify which symptoms are present (see DSM-IV for specific criteria). According to DSM-IV, "the essential feature of ADHD is a persistent pattern of inattention and/or hyperactivity-impulsivity that is more frequent and severe than is typically observed in individuals at a comparable level of development." Other criteria include:

a. Symptoms of hyperactivity-impulsivity or inattention that cause impairment that were present in childhood.
b. Current symptoms that have been present for at least the past six months.
c. Impairment from the symptoms present in two or more settings (school, work, home).

6. **Documentation Must Include a Specific Diagnosis**

The report must include a specific diagnosis of ADHD based on the DSM-IV diagnostic criteria. Individuals who report problems with organization, test anxiety, memory and concentration only on a situational basis do not fit the prescribed diagnostic criteria for ADHD. Given that many individuals benefit from prescribed medications and therapies, a positive response to medication by itself is not supportive of a diagnosis, nor does the use of medication in and of itself either support or negate the need for accommodation.

7. **A Clinical Summary Must Be Provided**

A well-written diagnostic summary based on a comprehensive evaluative process is a necessary component of the assessment. The clinical summary must include:

a. Demonstration of the evaluators having ruled out alternative explanations for inattentiveness, impulsivity, and/or hyperactivity as a result of psychological or medical disorders or non-cognitive factors;
b. Indication of how patterns of inattentiveness, impulsivity and/or hyperactivity across the life span and across settings are used to determine the presence of ADHD;
c. Indication of the substantial limitation to learning presented by ADHD and the degree to which it impacts the individual in the context for which accommodations are being requested (e.g., impact on the USMLE program); and
d. Indication as to why specific accommodations are needed and how the effects of ADHD symptoms, as designated by the DSM-IV, are mediated by the accommodation(s).

8. **Each accommodation recommended by the evaluator must include a rationale.**

The evaluator must describe the impact of ADHD (if one exists) on a specific major life activity as well as the degree of

NB000070

significance of this impact on the individual. The diagnostic report must include specific recommendations for accommodations. A detailed explanation must be provided as to why each accommodation is recommended and should be correlated with specific identified functional limitations. Prior documentation may have been useful in determining appropriate services in the past. However, documentation should validate the need for accommodation based on the individual's current level of functioning. The documentation should include any record of prior accommodation or auxiliary aid, including information about specific conditions under which the accommodation was used (e.g., standardized testing, final exams, NBME subject exams, etc.). *However, a prior history of accommodation without demonstration of a current need does not in itself warrant the provision of a similar accommodation.* If no prior accommodation has been provided, the qualified professional and/or individual being evaluated should include a detailed explanation as to why no accommodation was used in the past and why accommodation is needed at this time.

Because of the challenge of distinguishing ADHD from normal developmental patterns and behaviors of adults, including procrastination, disorganization, distractibility, restlessness, boredom, academic underachievement or failure, low self-esteem and chronic tardiness or inattendance, a multifaceted evaluation must address the intensity and frequency of the symptoms and whether these behaviors constitute an impairment in a major life activity.

NR000071

## Guidelines for Documenting Vision Impairments

In addition to the General Guidelines for all disabilities, the following information is provided to assist the applicant in documenting a need for accommodation based on a visual impairment.

Comprehensive evaluation reports of visual functioning should include:

- A detailed discussion of how the individual's specific signs, symptoms, and assessment results meet professionally recognized diagnostic criteria for the identified visual impairment. Relevant history and course of the presenting symptoms should be provided and the documentation should identify whether the condition is stable or could be expected to fluctuate. The individual's best corrected visual acuities, for both distance and near, must be specified. Where relevant to the diagnosis, comprehensive documentation should also include detailed information about the health of the eye(s), visual fields, binocular functioning, accommodative functioning, oculomotor functioning, and/or other pertinent information.

- Actual scores and results from all tests, procedures, measurements, and scales administered to demonstrate the level of impairment to vision functioning must be provided. These assessment data are imperative to allow for a professional review. When relevant to the impairment, examples of such data are: visual acuities (best-corrected for near and distance), visual field print-outs, specific tests of accommodation (e.g., relative accommodation, amplitudes, facility, dynamic or near-point retinoscopy), specific tests of vergence (e.g., nearpoint of convergence, cover test, prism vergences, facility), specific tests of reading eye movements (e.g., Developmental Eye Movement test, photo-electric oculogram).

- Detailed information about what therapy, medication, and low-vision aids are being used to treat the impairment, and the effectiveness of these interventions, including all relevant post-therapy data.

- Specific information concerning the current functional limitations imposed by the visual impairment (what the individual can and cannot do on a regular and continuing basis).

- A specific recommendation for all accommodations requested, *including low vision aids*, and an explanation of how the accommodations will reduce the impact of the identified functional limitations on the testing activity.

- Documentation should be typewritten and submitted on the professional's letterhead and be signed and dated by the evaluator. Handwritten notes, letters, or prescriptions are not sufficient to demonstrate substantial visual impairments.

Visual impairment in one eye only can often significantly impact the ability to perform three-dimensional tasks, such as driving or playing some sports. However, monocular conditions, in and of themselves, have not been shown to cause a substantial limitation in the ability to read or perform other two-dimensional tasks at near. Therefore, requests for accommodations for computer-based tests based on visual impairment in only one eye need to provide data to demonstrate reduced functioning in the fellow eye, such as of accommodation (focusing) or reading eye movements (saccades).

NB000072

## What to Do

**USMLE Step 1 and Step 2 CK and Step 2 CS**

**TO PROTECT YOUR CONFIDENTIALITY, ALWAYS SEND YOUR REQUEST AND DOCUMENTATION TOGETHER TO THE ADDRESS BELOW. Do not include these materials with your examination application.**

Address all requests and inquiries to the appropriate registration entity:

| Examination: | Type of applicant: | To request test accommodations, contact: |
|---|---|---|
| Step 1 or Step 2 (CK or CS) | Students and graduates of medical schools in the United States and Canada | Disability Services National Board of Medical Examiners 3750 Market Street Philadelphia, PA 19104-3190 (215) 590-9509 |
| Step 1 or Step 2 (CK or CS) | Students and graduates of medical schools outside the United States and Canada | Test Accommodations Coordinator Educational Commission for Foreign Medical Graduates 3624 Market Street Philadelphia, PA 19104-2685 USA (215) 386-5900 |

Instructions regarding Step 3 test accommodations requests are available at the USMLE website (www.usmle.org) and the FSMB website (www.fsmb.org).

**Test Accommodations**

Test accommodations include but are not limited to the following:

- Assistance with keyboard tasks
- Audio rendition
- Extended testing time
- Additional break time
- Enlarged text and graphics
- Permission for assistive devices

**Score Reporting**

USMLE policy requires annotation of score reports and transcripts for Step administrations for which test accommodations were used. Score recipients who inquire about the annotation will be provided with information about the nature of the test accommodation only.

**How to Submit a Request for Test Accommodations**

If you have a documented disability covered under the Americans with Disabilities Act (ADA) and require test accommodations, you must notify the USMLE in writing each time you apply for Step 1, Step 2 CK or Step 2 CS. The forms described below are available at the USMLE website (www.usmle.org).

NB000073

**New Requests**

Submit a completed form, *Step 1 and Step 2 CK Applicant's Request for Test Accommodations* or *Step 2 CS Applicant's Request for Test Accommodations* to the above address at the same time you submit your examination application.

**Subsequent Request for Test Accommodations**

If you received test accommodations for a previous USMLE Step (Step 1, Step 2 CK, and Step 2 CS) and would like the identical accommodations, please submit the following form(s) to the above address at the same time you send your examination application. This form constitutes your official notification.

- *Form for Requesting Subsequent Test Accommodations (Step 1 and Step 2 CK only)*

- *Form for Requesting Subsequent Test Accommodations (Step 2 CS)*

If you are requesting a change in accommodations or are previously approved for Step 1 or Step 2 CK but have not been approved for Step 2 CS, follow the instructions for New Requests above.

**Certification of Prior Test Accommodations**

If you received test accommodations in Medical School submit a completed Certification of Prior Test Accommodations to the above address along with your Step 1, Step 2 CK and Step 2 CS Applicant's Request for Test Accommodations.

**DO NOT SUBMIT:**

- Original documents; keep the original and submit a copy
- Research articles, resumes, curriculum vitas
- Handwritten letters from physicians or evaluators
- Documentation previously submitted to Disability Services
- Documentation previously submitted to your registration entity
- Previous correspondence from Disability Services
- Multiple copies of documentation (i.e., faxed and mailed copies of a document)
- Staples, clips, binders, page protectors, folders, or similar items
- Please note that submitting duplicate documentation and/or bound documentation may delay a decision regarding your request as all documentation must be processed.

**DO SUBMIT:**

- Legible copies
- All documents in English. You are responsible for providing certified English translations of foreign-language documentation
- Typed or printed letters and reports from evaluators
- Documentation from childhood if you are requesting accommodations based on a developmental disorder, i.e. LD, ADHD, Dyslexia
- Documentation of your functional impairment in activities beyond test-taking
- Documentation of your functional impairment beyond self-report

NB000074

Exhibit B

Exhibit B



UNITED STATES MEDICAL LICENSING EXAM
Step 1 Request Form

### Step 1 and Step 2 Clinical Knowledge
### Applicant's Request for Test Accommodations



Please type or print.

Accommodations are requested for the following Step examination (Use a separate form for each exam):

☑ Step 1      ☐ Step 2 Clinical Knowledge      ☐ Step 2 Clinical Skills   Year: _2009_

## Section A: Biographical Information

1. Name: _Cunningham_        _Chad_          _A_
   Last              First            Middle Initial

2. Gender:   ⊙ Male     ☐ Female

3. Date of Birth: _2/18/59_

4. SS# _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_        5. USMLE # _5  182-843-2_
        (if known)

6. Address: _514 Mindoro Dr SE_
   Street
   _Rio Rancho_                    _NM_          _87124_
   City                         State/Province    Zip/Postal Code
   _U.S._
   Country
   _(505)310-1801_
   Daytime Telephone Number
   _(505)994-9726_
   Alternate Telephone Number
   _ccunningham@salud.unm.edu_
   E-mail address

7. Medical School: _University of New Mexico - SOM_

(Over)

RECEIVED

MAY 1 3 2009

Disability Services

May 13 2009 11:18AM    HP LASERJET FAX       5058917292         P.2

## Section B: Nature of Disability

8. Indicate the nature of the disability and the year it was first professionally diagnosed (select all that apply):

**Sensory Impairments:**

☐ Hearing Disability _____          ☑ Visual Disability  *Scotopic Sensitivity Syndrome 2006*

**Learning Impairments:**

☑ Reading Disability  *2004 2009*    ☐ Writing Disability _____

☐ Mathematics Disability _____     ☐ Other: _____

**Language Impairments:**

☐ Receptive Language Disorder _____    ☐ Expressive Language Disorder _____

☐ Mixed Receptive/Expressive Language Disorder _____    ☐ Other: _____

**Medical Impairments:**

☐ Mobility/Motor _____             ☐ Diabetes/Thyroid Dysfunction _____

☐ Epilepsy/Neurological _____      ☑ Other:  *2006*

**Mental Health /Executive Function Impairments:**

☐ Anxiety Disorder _____           ☐ Mood Disorder/ Depression _____

☐ Attention Deficit Hyperactivity Disorder _____    ☐ Other: _____

## Section C: Accommodations Information

10. What accommodation(s) are you requesting? Accommodation(s) must be appropriate to the disability:

*I am requesting to take the exam over 2 days w/ additional Break time. If available adjust screen background to blue or green (not white); Also test in room were the lighting can be controlled (ie: decrease amount of Fluorescent lighting) or Double Time*

11. If you are requesting additional testing or break time, please indicate the amount of time requested (circle no more than one per Step).

**STEP 1:**

☐ Additional Break Time over 1 day          ☑ Additional Break Time over 2 days
☐ Additional Testing Time – Time and one-half    ☐ Additional Testing Time – Double Time
☐ Other (please specify): _____

(Continued on the next page)

2

**RECEIVED**

MAY 13 2009

**Disability Services**

NB000151

**STEP 2:**

- ☑ Additional Break Time over 2 days                      ☐ Additional Testing Time – Time and one-half
- ☐ Additional Testing Time – Double Time
- ☐ Other (please specify): _____

12. Do you require wheelchair access at the examination facility?

☐ yes              ☑ no

If you require an adjustable height table, please indicate the number of inches from the floor: _____

## Section D:  Accommodation History

13. Prior classroom or test accommodations that you have received:

A.  Standardized Examinations                      ☐ yes        ☑ no

**Medical College Admission Test (MCAT):**

Month/Year _____   __  __  _____

Accommodation received ____   _____

(If extra time, note amount given _____   _____ )

**Other:**

Month/Year _____   _____

Accommodation received _____   _____

(If extra time, note amount given _____   _____ )

B.  Medical School                                ☐ yes        ☑ no

Accommodation received _____   _____

Date Approved _____   _____

**If yes, have an appropriate official at your medical school complete the Certification of Prior Test Accommodations form.**

C.  College                                       ☐ yes        ☑ no

If yes, accommodations received _____

D.  Secondary or elementary school                ☐ yes        ☑ no

If yes, accommodations received _____

(Over)

3

RECEIVED

MAY 13 2009

Disability Services

NB000152

14. Authorization:

I authorize the National Board of Medical Examiners (NBME) to contact the entities identified in Section D of this request form, and the professionals identified in the documentation I am submitting in connection with it, to obtain any or all of the following: confirmation, clarification, and/or further information. I authorize such entities and professionals to provide NBME with all requested confirmation, clarification, and further information.

Signature: _____ Date: 5/12/09



RECEIVED

MAY 1 3 2009

Disability Services

NB000153

5/13/2009

TO:   Disability Services
      National Board of Medical Examiners
      3750 Market Street
      Philadelphia, PA 19104-3190



To Whom It May Concern:

I have had difficulty with reading for the majority of my life, and have had difficulty throughout my education with this condition. The combination of my current medical conditions has several impacts on my life in general. At home I have removed virtually all fluorescent lighting to reduce strain on my eyes. I limit myself to about 30-45mins duration of work on my computer at any given time and break for about 15-20mins this allows me to be relatively symptom free for the majority of the day at home. I wear dark colored lens under all lighting conditions while reading or working on a computer and especially when driving. These conditions are not only causing difficulty with my education but also my finances, the glasses I wear cost a total of about $700 a year and are not covered by my insurance, not to mention that I was required to repeat the first year of medical school at my expense due to my medical leave of absence. This makes for a very stressful environment for me, to continue to struggle with these conditions.

To describe what this does to me personally, while in public education (Jr. high, high school, etc) I was able to compensate for the most part. I was able to do very well in all classes except English courses and Spanish, which was the only course I ever failed and was just unable to learn. I could just listen in most classes, have perfect attendance, and take some notes with minimal review was able to perform very well in school overall. This carried over into college where I was able to tailor my courses to my strengths; it was however apparent that I still had problems with my required English, history, sociology, etc. were all lower some considerably due to a heavy reading requirement. It became fully apparent to me when I was trying to apply to medical school and taking the MCAT exam. I was unable to perform to my usual expectations and scored in the 19-22, with the aid of Kaplen I was able to get to a 25 which was enough to get me into medical school. That is when the reading requirement became so strong that I was unable to compensate and developed other medical conditions such as constant headaches and hypertension.

I had multiple eye exams throughout my life starting in elementary school for headaches while reading, since I did not require a prescription for eyeglasses, and I was able to compensate adequately in school I was told there was nothing that would help the headaches. I have had about 10-15 formal eye exam with different providers that all have tested me and determined I did not require a prescription, and none of them could explain the complications I was experiencing. My primary care providers could not find a reason either. When I began to read heavily and forced myself to continue regardless of headaches I pushed myself to elevating my blood pressure, until I could not do it anymore and left medical school.

I have noticed that during times, like my medical leave of absence, my blood pressure is easily controlled and I don't have headaches. What surrounds these time frames in my life is I was not in

RECEIVED

MAY 13 2009

Disability Services

school and very rarely read and spent short periods of time on the computer. During my leave I went from uncontrollable blood pressure to virtually no medication prior to restarting school, in which I was required to restart medication at a low dose with the use of my glasses. The common theme is classrooms with high fluorescent lighting, a lot of reading, and time on the computer doing research. Doing these tasks directly affects my health and well being.

This is why I am now requesting accommodations for these exams to reduce the amount of stain on my eyes at one given time. Allowing me to split the exam over two days gives less time in a situation that makes my blood pressure elevate and acutely gives me migraine style headaches which limits my performance on these exams, and I don't feel that represents the fullest of my ability to perform the duties of a physician. I would greatly appreciate the consideration of testing accommodations to take these exams. I have also submitted a request to University of New Mexico to allow accommodations for all testing that I must do in the remaining portions of school.

Thank you,

RECEIVED

MAY 13 2009

Disability Services

NB000149

# Exhibit C

Exhibit C

 **NBME**℠

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

-Confidential-

215-590-9500 phone
www.nbme.org

May 20, 2009

Chad A. Cunningham
514 Mindoro Dr. SE
Rio Rancho, NM 87124

1035189                5-182-843-2
Insufficient Documentatio

RE: USMLE Step 1                    USMLE ID#: 5-182-843-2

Dear Mr. Cunningham:

We have conducted a preliminary review of your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 1. However, the information you submitted is incomplete and we are therefore unable to make an informed decision about your request at this time.

As you may know, learning disorders are developmental disorders that usually emerge during childhood and typically have a significant impact on academic achievement. Even if a formal diagnosis is not assigned until later in life, it must be documented beyond self-report that such difficulties have disrupted your academic functioning from an early age. To date, no academic records have been provided for our review. However, some information about your academic history is presented in the May 11, 2009 Psychological Report by Janice K. Griffin, Ph.D. and in your personal statement. Dr. Griffin reported that you were an "A students (*sic*) except for English and Spanish" in middle and high school, and that in high school you "assisted the teachers in teaching math and science." She also indicated that due to a high level of achievement, you were permitted to work half-days at a physician's office, as your school would not permit an early graduation. Dr. Griffin stated that your college GPA "in classes that did not require a lot of reading" was a 3.9, but was lower in others. In your personal statement, you reported that you achieved a score of 25 (writing score not reported) on the MCAT, without accommodations, which as you mentioned, was sufficient for acceptance to medical school. Despite your reported difficulties, it was noted that you have not received any formal accommodations at any point in your educational career. Based on a preliminary review, these achievements do not seem consistent with a developmental disorder in reading or learning.

If you wish for us to process your request, you should provide objective records from as far back as you are able, such as grade reports from elementary, middle, or high school; results of standardized tests taken in childhood (e.g., California/Iowa Achievement Tests, ISEE, etc); contemporaneous reports from teachers, tutors or past treatment providers describing the nature of your academic problems; or any other records to document the functional impact of your reported difficulties during the developmental years.

In addition, you should provide objective records to show the chronic course and current functional impact of your reported difficulties, including your college transcript and your complete medical school transcript. You should also provide scores for each administration of nationally standardized exams you have taken, such as the SAT, ACT, GRE, and MCAT. Additional sources of information to document a substantial impairment in a major life activity may include job performance evaluations (from paid, volunteer, or internship positions), formal medical school faculty or supervisor feedback, clerkship/ward rotation evaluations, clinical course grades/evaluations, or any other sources to document what you can and cannot do on a regular and continuing basis.

NB000076

Finally, the Psychological Report by Dr. Griffin does not include your obtained standard scores for the Woodcock-Johnson III Tests of Achievement (WJ III ACH) or Tests of Cognitive Ability (WJ III COG). Please have your evaluator provide your standard scores for all subtests of the WJ III administered, and to report the norms that were used to derive your scores. If scores were based on grade norms, please have your evaluator provide age-based scores instead. A Compuscore summary may be provided if available. All documentation from professionals should be typewritten, submitted on the professional's letterhead, signifying his or her credentials, and must be signed and dated by the professional.

Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the Americans with Disabilities Act (ADA), as amended by the ADA Amendments Act of 2008 (together, "ADA"). A diagnostic label, in and of itself, does not establish coverage under the ADA, nor does prior receipt of accommodations for a particular activity guarantee that identical accommodations are indicated or will be available in all future settings and circumstances. The ADA covers individuals who are substantially limited in a major life activity. Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment.

Please refer to the USMLE Guidelines to Request Test Accommodations at www.usmle.org for a detailed description of how to document a need for accommodation and discuss this information with your evaluators or treatment professionals as needed to assist you in compiling complete and comprehensive documentation.

We will release the hold on your scheduling permit at this time. You may schedule your examination and test under standard conditions or you may provide additional documentation for our review as outlined above. The requested information will assist us in determining whether you are a covered individual as defined by the ADA, and if so, what accommodations are appropriate.

If you choose to provide additional documentation, you may send it by mail to Disability Services, 3750 Market St. Philadelphia, PA 19104. Alternatively, you may fax documents to 215-590-9422 and call 215-590-9700 to verify receipt. Please do not send bound or tabbed materials, or duplicate copies of documentation already submitted as this will delay processing of your request. You are responsible for monitoring your registration status and examination eligibility. We must receive sufficient additional documentation to process your request prior to the expiration of your eligibility period.

If we do not receive any additional documentation from you, or if you test under standard conditions, your request for accommodations will be cancelled. If you do not plan to submit additional documentation and would like to test under standard conditions, please contact your case coordinator, Lisa D. Brooks, at 215-590-9700.

Sincerely,

Michelle M. Goldberg, Ph.D.
Disability Assessment Associate, Disability Services