IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**CHAD CUNNINGHAM**,

        Plaintiff,

v.                                                                                                   No. CIV 10-451 BB/RLP

**UNIVERSITY OF NEW MEXICO
BOARD OF REGENTS,** *et al.***,**

        Defendants.


## MEMORANDUM OPINION

This matter is before the Court for consideration of Defendants University of New Mexico Board of Regents and University of New Mexico School of Medicine's ("UNM Defendants") motion to dismiss (Doc. 9) and Defendant National Board of Medical Examiners' ("NBME") motion to dismiss (Doc. 16).  After considering all submissions of the parties and the applicable law, the Court will *GRANT* the motions.

    **Background**

According to his complaint, Plaintiff "has suffered from a reading disability since elementary school, where he suffered from severe headaches and other problems after prolonged reading."  Am. Compl., ¶ 10.  Medical examinations administered during his childhood showed "no physical problems" with his eyes.  *Id*.  He learned to compensate for the difficulty in reading and was "a superior student in grade school, high school and college."  *Id*.  "During his entire academic career the Plaintiff was able to complete assignments requiring extensive reading with difficulty but *without accommodation*..." *Id*., ¶ 21 (emphasis added).

In 2005, Plaintiff began medical school at UNM. Before completing the first year, he "suffered from constant and severe headaches and dangerously high blood pressure caused by the demands of reading." *Id.*, ¶ 15. As a result, he took a medical leave from school. *Id.* He then underwent medical evaluation and treatment, through which he learned that he has Scoptic Sensitivity Syndrome ("SSS"). *Id.*, ¶ 16. SSS is a condition caused by hypersensitive photoreceptors in the eyes; it is sometimes categorized as a form of dyslexia. *Id.* Plaintiff returned to UNM in 2007, where he learned that he had to repeat the first year of courses. *Id.*, ¶ 18. He "requested accommodation for his disability from Defendant UNM and was refused." *Id.*, ¶ 19.

"Plaintiff resumed his studies, using prescribed colored glasses to assist him in reading and prescription medicines to control his blood pressure." *Id.*, ¶ 22. He completed the first two years of medical school courses and passed the examinations. *Id.*, ¶ 23. Then, he prepared to take the United States Medical Licensing Examination[1] ("MLE"). *Id.*

Plaintiff took Step 1 of the MLE without any accommodations, but he did not pass. *Id.*, ¶ 26. He applied for a retesting of Step 1 and formally requested accommodation for his SSS condition from Defendant NBME. *Id.*, ¶ 28. In his request, he included evaluations from a physician and a psychologist that described his condition and the accommodations that would help him. *Id.*, ¶ 29. Defendant NBME did not immediately grant the request for accommodation; instead, it asked for further evidence of Plaintiff's SSS condition, including school records, standardized test scores, and other records that documented his condition. *Id.*, ¶¶ 30-31. Plaintiff then petitioned Defendant UNM for assistance in obtaining an accommodation

---

[1] The MLE is a three-step examination process for medical students given by Defendant NBME. Students must complete all steps of the MLE to remain in school, graduate, and become licensed to practice medicine in New Mexico. Am. Compl., ¶ 25.

from Defendant NBME.  *Id.*, ¶ 36.  The Disability Committee of UNM did not assist Plaintiff in obtaining an accommodation for his second attempt at the MLE.  *Id.*, ¶ 37.

Plaintiff did not submit any other documentation to Defendant NBME, and he retook Step 1 of the MLE without any accommodation.  *Id.*, ¶ 32.  He then failed the examination for the second time.  *Id.*, ¶ 33.  Pursuant to medical school rules, Plaintiff was placed on academic leave until he passed Step 1 of the MLE.  *Id.*, ¶ 40.  Plaintiff then filed suit in this Court, alleging violations of 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, and breach of contract.

**Standard of Review**

In deciding a motion to dismiss, the Court must accept all well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  *See Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008).  The Court looks to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.  *See id.*  A plaintiff does not have to provide detailed facts, but the complaint must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).   The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

**Jurisdiction**

I. Eleventh Amendment Immunity–UNM Defendants

UNM Defendants claim that they are entitled to state sovereign immunity pursuant to the Eleventh Amendment to the U.S. Constitution.  UNM Defs.' Mot. to Dismiss, p.6.  State sovereign immunity from suit is a jurisdictional inquiry, and it must be resolved before proceeding to the merits of a case.  *Brockman v. Wyoming Dept. of Family Services,* 342 F.3d

1159, 1163 (10th Cir. 2003) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-94 (1998).

It is well established that "[UNM School of Medicine], its Regents, and the Committee on Admissions are 'arms of the state,' entitled to Eleventh Amendment immunity." *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 494 n.3 (10th Cir. 1998). However, there are two exceptions to a state's Eleventh Amendment immunity from suit in federal court: "(1) if Congress abrogates the state's immunity in the exercise of its power of enforcement under § 5 of the Fourteenth Amendment; or (2) if the state voluntarily waives its immunity." *Ward v. Presbyterian Healthcare Services*, 72 F.Supp.2d 1285, 1290 (D.N.M. 1999) (internal citations and quotations omitted).

### A. Waiver

New Mexico has not waived its immunity; on the contrary, state statutes such as the New Mexico Tort Claims Act ("NMTCA") contain express statements that it does not consent to federal jurisdiction. *Ward,* 72 F.Supp.2d at 1293. Plaintiff has not provided, and the court has not found, any evidence that New Mexico has waived its immunity under the laws cited in this case. Thus, the second exception to Eleventh Amendment state immunity does not apply here.

### B. Abrogation

In order to determine whether Congress intended to abrogate state sovereign immunity, courts must answer two questions: "first, whether Congress has unequivocally expressed its intent to abrogate the immunity, and second, whether Congress has acted pursuant to a valid exercise of power." *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 635 (1999) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996)) (internal quotations omitted).

The Supreme Court has determined that Congress did *not* intend to abrogate state immunity by passing 42 U.S.C. § 1983.  *Quern v. Jordan*, 440 U.S. 332, 341 (1979).  Plaintiff concedes that the Eleventh Amendment forecloses his 42 U.S.C. § 1983 claims for money damages, but he argues that he may proceed with his claims for prospective relief under the *Ex Parte Young* exception to state immunity.  However, the Tenth Circuit has determined that the *Ex Parte Young* exception does not apply to state agencies.  *Buchwald,* 159 F.3d at 495.  Since the UNM Defendants are state agencies, their Eleventh Amendment immunity is not precluded by *Ex Parte Young*.  *See id.*  The Court does not have jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims, so those will be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(1).

In contrast to 42 U.S.C. § 1983, Congress *did* validly abrogate state immunity by passing Title II of the ADA "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment."  *U.S. v. Georgia*, 546 U.S. 151, 159 (2006).  It also amended the Rehabilitation Act of 1973 to validly abrogate immunity when a state accepts federal funds under the Act.  *Brockman*, 342 F.3d at 1167; 42 U.S.C. § 2000d-7(a)(1).

It is not clear from the complaint whether Plaintiff alleges that New Mexico receives federal funds under the Rehabilitation Act.  UNM Defendants do not deny that New Mexico has accepted funds under the Rehabilitation Act, nor do they raise any other arguments as to lack of jurisdiction over Plaintiff's Rehabilitation Act claims.  The Court has not found any evidence that New Mexico does not receive funds under the Act, or any other reason why the Act would not apply to UNM Defendants in this case.  Thus, the Court has jurisdiction over Plaintiff's Rehabilitation Act claims pursuant to 42 U.S.C. § 1331.

Jurisdiction over Plaintiff's ADA claims is not so easily resolved. Plaintiff vaguely refers to "due process" violations in his complaint, but he does not specifically allege a violation of the Fourteenth Amendment. What's more, Title II of the ADA does not abrogate state immunity in every instance of an alleged Fourteenth Amendment violation. *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (observing that Title II abrogation is limited).

In *Lane*, the plaintiff's ADA claims concerned access to courts and judicial services. Here, Plaintiff's claims center around his medical school education and testing. Unlike access to courts, education is not a fundamental right under the U.S. Constitution. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35-37 (1973). Other district courts have declined to extend Title II abrogation to cases involving, as this one does, higher education. *See*, *e.g.*, *Doe v. Board of Trustees*, 429 F.Supp.2d 930, 939 (N.D.Ill. 2006). However, the First, Third, Fourth, and Eleventh Circuits interpreted *Lane* to apply to cases involving disability discrimination in a variety of contexts and *did* extend Title II abrogation to suits concerning disability discrimination in higher education. *Toledo v. Sanchez,* 454 F.3d 24, 40 (1st Cir. 2006); *Bowers v. National Collegiate Athletic Ass'n,* 475 F.3d 524, 550-53 (3rd Cir. 2007); *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 490 (4th Cir. 2005); *Assoc. for Disabled Americans v. Fla. Int'l Univ.*, 405 F.3d 954 (11th Cir. 2005); *see also* Diane Heckman, "The Impact of the Eleventh Amendment on the Civil Rights of Disabled Educational Employees, Students and Student-Athletes," 227 Ed. L. Rep. 19, 39 (Feb. 7, 2008) ("the majority position is that public universities may be sued"). The Court will follow the precedent of those Circuits.

"Title II [of the ADA] provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity.'" *Constantine*, 411 F.3d at 487 (quoting 42 U.S.C. § 12132). Congress intended this protection against disability discrimination to apply to a variety of public services, including education. *Id*.; 42 U.S.C. § 12101(a)(3). While it is true that *Lane* concerned the fundamental right of access to courts, nowhere in that opinion does the Supreme Court state that Title II abrogation should be limited to cases involving fundamental rights. *See Lane,* 541 U.S. 509. Rather, the Court observed that Congress' use of "prophylactic power" was appropriate "given the sheer volume of evidence demonstrating the nature and extent of unconstitutional discrimination against persons with disabilities in the provision of public services." *Id*. at 528.

"Considering the pattern of unconstitutional disability discrimination described by the Court in *Lane*, [this Court] cannot say that Title II is 'so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior.'" *Constantine*, 411 F.3d at 490 (quoting *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997)). Indeed, Title II requires only "reasonable modifications that would not fundamentally alter the nature of the service provided," and so it is self-limiting. *Assoc. for Disabled Americans,* 405 F.3d at 959 (quoting *Lane,* 541 U.S. at 531). With such intrinsic limits in place, Title II is a proportional response to disability discrimination the Supreme Court has found to be extensive in the area of public services. *Lane,* 541 U.S. 509; *see also Assoc. for Disabled Americans,* 405 F.3d at 959.

Moreover, the parties do not dispute that Congress properly abrogated state immunity through the Rehabilitation Act of 1973, which is substantially similar to the ADA. Through comparison, it would seem that if one of the statutes properly abrogated state immunity, then the other would as well. The Court has sufficient legal basis to find that Title II of the ADA is a valid abrogation of states' Eleventh Amendment immunity. *See Toledo,* 454 F.3d at 40; *Bowers,*

475 at 550-53; *Constantine*, 411 F.3d at 490; *Assoc. for Disabled Americans,* 405 F.3d at 959. Thus, the Court has subject matter jurisdiction over Plaintiff's ADA and Rehabilitation Act claims against UNM Defendants.

II. Ripeness–Defendant NBME

Defendant NBME argues that Plaintiff's claims against it are not ripe for adjudication. Def. NBME's Mot. to Dismiss, p. 9. Like state sovereign immunity, ripeness is a threshold jurisdictional question that courts must resolve before proceeding to the merits of a case. *U.S. v. Wayne*, 591 F.3d 1326, 1329 n.1 (10th Cir. 2010).

Defendant NBME argues that Plaintiff's discrimination claims against it are not ripe, because it has not yet denied Plaintiff's request for disability accommodations. Def. NBME's Mot. to Dismiss, p. 9. However, Plaintiff explicitly alleges in his complaint that Defendant NBME denied his request for an accommodation. Am. Compl., ¶ 30. Plaintiff also alleges that Defendant NBME has violated the ADA and Rehabilitation Act by "imposing unreasonable and burdensome conditions on the Plaintiff's application for accommodation." *Id*., ¶ 30. Defendant NBME admits that it requested additional information from Plaintiff after reviewing the initial request. Def. NBME's Mot. to Dismiss, p. 5. Thus, whether or not Defendant NBME denied Plaintiff's original request, Plaintiff's discrimination claims are still ripe for adjudication, because the issue of imposing an undue burden on the accommodation process creates a live issue.

**Discussion**

I. ADA and Rehabilitation Act claims

Plaintiff alleges that Defendant UNM "wrongfully and without sufficient or good cause denied the Plaintiff his right to apply for and obtain reasonable accommodation for his disability

as provided by the [ADA] and the Rehabilitation Act of 1973." Am. Compl., ¶ 48.  He also alleges that Defendant NBME violated the same laws by failing to provide him an accommodation when taking the MLE.  *Id*., ¶ 30.  The ADA and Rehabilition Act prevent discrimination by public entities (ADA) and recipients of federal funding (Rehabilitation Act) on the basis of disability.  42 U.S.C.A. §§ 12101-12213; 29 U.S.C.A. § 794.

"According to Title II of the ADA, 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'"  *McGuinness v. Univ. of New Mexico Sch. of Med.*, 170 F.3d 974, 978 (10th Cir. 1998) (quoting  42 U.S.C. § 12131(2)).  "The term 'disability' means 'a physical or mental impairment that substantially limits one or more of the major life activities' of the individual."  *Id*. (quoting 42 U.S.C. § 12102(2)(A)).  Reading, among others tasks, is defined as a "major life activity" under the ADA[2].  42 U.S.C.A. § 12102(2)(A).

"The first element of a discrimination claim under the ADA is proof that the plaintiff has a qualifying 'disability' under the statute."  *Kellogg v. Energy Safety Services Inc*., 544 F.3d 1121, 1124 (10th Cir. 2008).  As in the ADA, the first element of a prima facie Rehabilitation Act claim is "that the plaintiff is disabled under the Act."  *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004).  Courts evaluate Rehabilitation Act claims using the same standards as they use to evaluate ADA claims.  *See*, *e.g*., *McGeshick*, 357 F.3d at 1150.

In this case, Plaintiff has not plead that he is "disabled" as that term is defined by the ADA and the Rehabilitation Act.  Plaintiff has not alleged that his SSS condition substantially

---

[2] Plaintiff did not specify which activity he considered the impaired "major life activity" for purposes of his ADA claims.  However, the entire suit arises from Plaintiff's difficulties associated with reading, and he refers to no other "major life activity."

limits reading or any other life activity; rather, he writes that "during his entire academic career [he] was able to complete assignments requiring extensive reading with difficulty but *without accommodation*." Am. Compl., ¶ 21 (emphasis added). He also notes that he "was a superior student in grade school, high school and college." *Id*., ¶ 12. Finally, he admits that he is able to compensate for the effects of SSS by "using prescribed colored glasses to assist him in reading and prescription medicines to control his blood pressure." *Id*. ¶ 22.

Courts "must consider the plaintiff's ability to mitigate his impairment in determining if that impairment substantially limits a major life activity" as required by the ADA and the Rehabilitation Act. *McGuinness,* 170 F.3d at 978. Here, Plaintiff explicitly states that he is able to mitigate the effects of SSS and has been successful doing so. Am. Compl., ¶¶ 12, 22. He also writes that he has been successful during his entire academic career, despite his SSS condition. Thus, Plaintiff has failed to substantiate the first element of prima facie ADA and Rehabilitation Act claims by showing he is "disabled" as defined by the Acts. Plaintiff has failed to state a claim under the ADA or Rehabilitation Act, so the Court will dismiss those claims pursuant to Fed. R. Civ. Pro. 12(b)(6).

II. Breach of Contract claims

Plaintiff's only remaining claims against Defendants are for breach of contract. Breach of contract is a state law claim. *See, e.g., Madsen v. Prudential Federal Sav. & Loan Ass'n*, 635 F.2d 797, 802 (10th Cir. 1980) ("the interpretation and enforcement of contracts are traditionally within the province of state courts"). Federal courts do not have independent jurisdiction over state law claims, unless such claims "turn on substantial questions of federal law." *Grable & Sons Metal Products, Inc. v. Darue*, 545 U.S. 308, 312 (2005).

Unlike *Grable*, where the state-law claim at issue turned on federal law regarding IRS short sales, Plaintiff's breach of contract claims do not turn on federal law. Plaintiff alleges that Defendant UNM breached "its duty of good faith and fair dealing by wrongfully and arbitrarily failing to assist the Plaintiff with his disability." Am. Compl., ¶ 54. He also alleged that Defendant NBME violated its contract with him by failing to provide testing accommodations. Am. Compl., ¶ 62. However, according to the facts in his complaint, Plaintiff is not entitled to relief under federal disability law. Plaintiff is not "disabled" as defined by the ADA and Rehabilitation Act. If Plaintiff is entitled to accommodations for his SSS condition, such entitlement does not arise from federal law. Moreover, the contract covenants of good faith and fair dealing, as well as third party beneficiaries, are defined by state, not federal, law. *See Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498, 1506 (10th Cir. 1996) (holding that federal courts in the Tenth Circuit apply state law to interpret contractual obligations). Therefore, the Court only has supplemental, rather than original, subject matter jurisdiction over Plaintiff's state-law claims for breach of contract.

Federal supplemental subject matter jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). In the interest of comity and federalism, district courts are advised against making "needless decisions of state law." *TV Commc'ns Network, Inc.* 964 F.2d at 1028. If federal

claims are dismissed before trial, leaving only issues of state law, the federal district court should decline to exercise supplemental jurisdiction by dismissing the case without prejudice. *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Carnegie-Mellon Univ.,* 484 U.S. at 350).

The instant suit is not yet at trial, so issues of judicial economy and fairness are not implicated here. *See, Carnegie-Mellon Univ.*, 484 U.S. at 350.  Rather, the issues of comity and federalism are at the forefront, because the Court would have to decide matters of state law if it continued to exercise jurisdiction over Plaintiff's contract claims.  *See McWilliams v. Jefferson County*, 463 F.3d 1113, 1117 (10th Cir. 2006).  "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir.1990).  Though Plaintiff cited federal law as part of his contract claim, he is not entitled to relief under the laws he cited.  Any breach of contract claim he may have against the Defendants could only arise, if at all, from state law.  Thus there is not a compelling reason to maintain jurisdiction over this suit, and the state law claims would be better addressed in state court.  *See, Gaenzle*, 614 F.3d at 1229; *TV Commc'ns Network, Inc.* 964 F.2d at 1028; *Thatcher Enters.*, 902 F.2d at 1478.  Plaintiff's claim for breach of contract will be dismissed without prejudice for lack of subject matter jurisdiction.

**Conclusion**

UNM Defendants are immune from Plaintiff's 42 U.S.C. § 1983 claims against them, so those claims will be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(1) for lack of subject matter jurisdiction. Plaintiff has failed to allege sufficient facts in his complaint to make a plausible claim that he is "disabled" as defined by the ADA and Rehabilitation Act of 1973.  Thus, he has failed to state a claim under either statute.  Those claims will be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).  No federal law claims remain in this suit, so the Court will decline to extend

supplemental jurisdiction over Plaintiff's contract law claims. Those claims will be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(1) for lack of subject matter jurisdiction.

Dated this 20th day of April, 2011.

                                            *[signature: Bruce D. Black]*

                                            BRUCE D. BLACK
                                            United States District Judge